2021 IL App (1st) 190263
No. 1-19-0263
Opinion filed March 25, 2021

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CR 14618 |
| CENO JACKSON, | ) ) ) | The Honorable Catherine M. Haberkorn, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Reyes and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Ceno Jackson appeals from the second-stage dismissal of his petition for postconviction relief and seeks a remand for further second-stage proceedings. Defendant claims that he was denied the reasonable assistance of postconviction counsel when his appointed counsel failed to adequately support his *pro se* claim that his trial counsel was ineffective.

¶ 2 Defendant was convicted after a jury trial of being an armed habitual criminal and sentenced to 16 years in the Illinois Department of Corrections (IDOC). The arrest stemmed

from a police officer's recovery of a handgun from defendant's pants pocket after an anonymous tip that an African-American "male *** with a red shirt" on a particular street corner "had a gun on his person."

¶ 3        On direct appeal, defendant claimed that the trial court erred in denying his motion to suppress evidence where the police lacked reasonable suspicion to stop him. *People v. Jackson*, 2014 IL App (1st) 121926-U, ¶ 2. Defendant argued that the officers did not notice a bulge in his pants pocket prior to seizing him and, thus, the stop was based entirely on a prior anonymous tip that lacked enough detail to justify the stop by itself. *Jackson*, 2014 IL App (1st) 121926-U, ¶¶ 14, 19. On direct appeal, we found that there was evidence in the record to support a finding that, "[p]rior to effectuating the *Terry* stop in this case, [the police officer] personally observed a bulge which he believed to be a gun in defendant's pants pocket," and which, in turn, "corroborated the assertion of illegality in the tip." *Jackson*, 2014 IL App (1st) 121926-U, ¶ 28.

¶ 4        After we denied his direct appeal, defendant filed the *pro se* petition at issue, in which he alleged that he asked his trial counsel repeatedly to introduce the red shirt and jeans that he was wearing when arrested, so that the jury could observe "how long [the] shirt was and how baggy the jeans were to demonstrate that" the officer could not have possibly observed a bulge. After postconviction counsel was appointed and a supplemental petition was filed, the State filed a motion to dismiss, which was granted.

¶ 5        On this appeal, defendant argues that, even with the assistance of counsel, the record failed to indicate whether there was a photo of defendant wearing baggy clothes when he was arrested, whether his clothing was inventoried by jail personnel, whether the clothing was in storage, or whether trial counsel had access to the clothing. Defendant claims that

postconviction counsel rendered unreasonable assistance when the record lacked any indication whether she had attempted to obtain the clothing, the jail inventory sheet, or arrest photos.

¶ 6      For the following reasons we vacate the second-stage dismissal and remand for further second-stage proceedings.

¶ 7      BACKGROUND

¶ 8      On March 30, 2011, defendant moved to quash his arrest and suppress evidence on the ground that his conduct, "prior to his arrest, was such as would not be interpreted by the arresting officers as constituting probable cause that [he] had committed or was about to commit a crime." On May 5, 2011, the sole witness at the suppression hearing was Officer Sayeed Tanovic, one of the two arresting officers.

¶ 9      Officer Tanovic testified that on August 1, 2010, at 12:20 a.m., he was in civilian clothes, in an unmarked police vehicle, in the vicinity of West Windsor Avenue in Chicago, when he first observed defendant standing on the sidewalk. Officer Tanovic was with his partner, Officer Pacocha.[1] Defendant did not appear to be breaking any laws or making any threatening or unusual movements. No weapon was visible on defendant's person, and nothing was protruding from his pocket. Officer Tanovic did not have a warrant for defendant's arrest.

¶ 10      Before noticing defendant, Officer Tanovic had received a call concerning an anonymous informant who had observed an African-American "male *** with a red shirt" in the vicinity of Sheridan Road and Wilson Avenue with "a gun on his person." The informant did not describe the individual's age, facial hair, height, or weight or any tattoos or markings.

---

[1] Officer Pacocha's first name does not appear in the appellate record.

After receiving this call, Officer Pacocha told Officer Tanovic that, "a few minutes before," he had observed an African-American "male *** with a red shirt" walking on Sheridan Road toward Windsor Avenue. Office Tanovic testified that Windsor Avenue is a half-block south of Wilson Avenue. The two officers were only a few blocks away, so they drove toward Sheridan and Wilson.

¶ 11    After observing defendant in a red T-shirt, the officers did not turn on their lights or siren or draw their weapons. While seated in the driver's seat of his vehicle, Officer Tanovic could not discern a bulge in defendant's pocket. Officer Tanovic, who was wearing a police "star" on his vest, exited his vehicle, approached on foot, and announced his office. Defendant did not try to flee. When Officer Tanovic stated, "Police, let me see your hands," defendant put his hands up.

¶ 12    Officer Tanovic testified: "Upon approach, I observed the bulge in his front right jeans pocket. And once I approached him, I conducted a pat down search of that pocket." Officer Tanovic clarified that he observed the bulge before he reached defendant. The pat down revealed the presence of a "heavy, metal object," which the officer recovered. The object was a .25-caliber Raven Arms pistol, five to six inches in length, that was completely inside defendant's pocket.

¶ 13    Officer Tanovic testified that he had been a Chicago police officer for 5½ years and that he had been "in the military since the age of 18. So[,] basically all my adult life, I've been around weapons." At the time of the offense, Officer Tanovic had made numerous arrests in the vicinity of Sheridan Road and Wilson Avenue for narcotics and "gang-related" activity, and he was aware of shootings in the area. Based on his experience in the area and the anonymous tip, he feared for his safety as he approached defendant and, therefore, conducted

4

the pat down. Based on his experience in the military and as a police officer, he recognized the object he felt "as a gun."

¶ 14      In closing argument, defense counsel argued that this case was similar to *Florida v. J.L.*, 529 U.S. 266, 268 (2000), in which the United States Supreme Court found that an anonymous tip, by itself, was insufficient to justify a stop, when the tip indicated only that "a young [African-American] male [was] standing at a particular bus stop and wearing a plaid shirt [and] was carrying a gun."

¶ 15      After listening to arguments from both sides, the trial court found that, when "the seasoned officer both in the police force and in the armed forces and very familiar with weapons" approached defendant, "he observed an unusual bulge in the defendant's clothing," which is "what makes this case different from the case cited by defendant." Based on this "distinctive point between the case cited and the case at hand," the trial court denied defendant's motion to quash his arrest and suppress the resulting evidence.

¶ 16      At trial, defense counsel argued in opening statement that "you'll hear in the evidence what [defendant] was wearing, and the evidence will say it's a red shirt. But they won't show that he's wearing baggy pants ***."

¶ 17      Both Officer Tanovic and his partner, Officer Pacocha, testified at trial. Officer Tanovic's testimony was substantially similar to the testimony he provided at the hearing described above. Officer Tanovic was shown People's exhibit No. 1, which he identified as a photo of defendant taken on the night of the arrest that depicted defendant's red shirt. On cross-examination, when defense counsel asked whether defendant was wearing "baggy pants," Officer Tanovic replied defendant was wearing "perfect fit pants." Officer Tanovic testified that he first observed "the bulge about eight to ten feet away." At the police station when

defendant was being processed, Officer Tanovic observed that defendant had "a lot of personal property," including "pay stubs, Social Security, some jewelry," and that he did not "remember how many cell phones." On redirect, Officer Tanovic explained that he did not inventory the red shirt because "[w]e don't send our prisoners to lockup without wearing clothes on."

¶ 18    Officer Pacocha's testimony was similar to his partner's testimony, except that he testified that he did not observe a bulge in defendant's pants pocket until after defendant raised his hands in the air. When Officer Pacocha observed the bulge, he made eye contact with his partner, and they "gave each other a look that we were both seeing the same thing." When the officers reached defendant, Officer Tanovic "grabbed [defendant's] right pants pocket" from the outside of the garment and then removed the handgun from the pocket. After defendant was arrested and transported to the police station, Officer Pacocha read him his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant then stated:

> "A guy in a black Cadillac gave [the handgun] to me at Sheridan and Wilson. ***
> [H]e was starting to freak out because he saw you guys in the area. I think he might
> have been on meth. After he gave me the gun, I just walked away. I think he called on
> me because I just walked away. I know I'm not supposed to have this. This is going to
> be a felony. And can we work something out."

¶ 19    Officer Pacocha identified People's exhibit No. 1 as an arrest photo of defendant that depicted defendant in the red shirt. People's exhibit No. 1, which was received into evidence, depicts defendant solely from the chest up, and it is cropped to show only the start of his shoulders. Although the sleeves are not visible in the photo, the shirt appears to be a collarless, solid red T-shirt. On cross-examination, Officer Pacocha testified that defendant was approximately six feet tall and 200 pounds.

6

¶ 20        Both parties stipulated that defendant had "been previously convicted of two qualifying felony offenses." The State rested, and the defense rested without presenting evidence. In closing argument, defense counsel argued to the jury: "You can see [defendant]. You can see how big he is. And you can see how small that gun is, that teensy-weensy little gun. And you can see the size for yourself, whether that is believable; whether it's believable that the officer saw a bulge on [defendant]." After listening to closing arguments and jury instructions, the jury found defendant guilty of being an armed habitual criminal. At sentencing, the trial court observed that the applicable sentencing range was 6 to 30 years. After considering factors in aggravation and mitigation, the trial court sentenced defendant to 16 years with IDOC. As noted above, defendant's conviction and sentence were affirmed on direct appeal.

¶ 21        After the direct appeal, defendant filed a *pro se* petition on August 13, 2015, that claimed, among other things, ineffective assistance of counsel. Defendant alleged that he "requested several times to counsel to bring forth the red shirt and jeans to show jury members how long [the] shirt was and how baggy the jeans were to demonstrate that what *** was in [the] front pocket *** could [not] be seen." In an affidavit attached to the petition, defendant averred that he was "wearing a very extra long red shirt that went and\or covered the front pockets of [his] very baggy blue jeans the night of August 1, 2010." In a second affidavit, defendant averred that his counsel was ineffective for "not having the red shirt and blue jeans brought in to show jury the size they were and how big and baggy they fit." On October 23, 2015, the trial court advanced the petition to the second stage and appointed counsel.

¶ 22        Almost two years later, on September 15, 2017, postconviction counsel filed a certificate, pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), in which she averred that she had consulted with defendant by phone and by mail and that she had obtained

and examined "the record of proceedings at the trial, including the common law record, report of proceedings and any exhibits in possession of the Clerk of the Circuit Court." She further averred that she had "obtained and examined the attorney's trial file as well as spoken with both trial attorneys" and had obtained and examined "the trial court file." She averred that she had made any amendments to defendant's *pro se* petition that were necessary for an adequate presentation of his contentions.

¶ 23    On September 15, 2017, postconviction counsel also filed a supplemental petition to augment defendant's previously filed *pro se* petition.[2] The supplemental petition included an additional affidavit from defendant, dated January 17, 2017, in which defendant averred that, "[t]hroughout the pendency of this case, I repeatedly reported my dissatisfaction with the representation of [trial counsel]. I even spoke to her supervisor, but nothing was ever done ***." Although postconviction counsel had averred in her Rule 651(c) certificate that she had spoken with trial counsel, no affidavits from counsel were attached.

¶ 24    On July 13, 2018, the State filed a motion to dismiss both the *pro se* and supplemental petitions. In its motion, the State argued that defendant's "*pro se* claim that trial counsel was ineffective for failing to introduce the baggy clothing he was wearing on the night of his arrest is not properly supported." Specifically, the State argued that defendant "fails to present the Court with anything other than his own conclusory description of the clothing as 'baggy.' "

¶ 25    On January 25, 2019, the trial court held a second-stage hearing on the State's motion to dismiss. At the hearing, defense counsel argued:

---

[2] On August 15, 2017, the trial court stated that defendant "wrote on his own. He wrote on his own after I already appointed the Public Defender's Office. And he sent another version, so I'm just gonna let his lawyer look at it." The record before us contains only one *pro se* postconviction petition.

"[Defendant] informed his attorney that the night he was arrested he was wearing both baggy pants and an untucked shirt. Trial counsel never produced these items for either the motion or trial. These pieces of clothing would have shown that there was no way the officer could have seen the bulge, as they stated: and, therefore, their testimony would have been impeached. At the time that [defendant] was arrested, he was wearing these clothes; therefore, they were available to Counsel, and they could have been produced at both trial and motion."

¶ 26 The trial court found:

"The fact about the clothing, there's nothing to say—the defendant does not produce anything to say what happened with the clothing, like if that clothing was in fact available to the lawyer and the lawyer chose to ignore it. There's no proof that the clothing was available. There's no evidence that the clothing was inventoried or that it even still existed at the time. A lot of times just because someone had it on at the time doesn't mean it's inventoried and still exists in inventory property. The defendant has to show that in fact it was there and that the baggy pants were available, that the lawyer chose to ignore them. *** [T]he defense needs to show in fact that the pants existed at the time[.] *** There's no proof *** that in fact they existed at the time of the trial."

¶ 27 The trial court granted the State's motion to dismiss on January 25, 2019, and defendant filed a notice of appeal on the same day. This timely appeal followed.

¶ 28 ANALYSIS

¶ 29 I. Postconviction Stages

¶ 30 Defendant seeks relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), which provides a statutory remedy for criminal defendants who

claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for an appeal; instead, it is a collateral proceeding that attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 31    The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 32    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The petition in the case at bar was dismissed at the second stage.

¶ 33    If a defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court typically acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 34                                  II. Standard of Review

¶ 35    In the case at bar, the trial court found that defendant's *pro se* and supplemental petitions and attached affidavits failed to make a substantial showing.

¶ 36    "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 37    Since this stage involves purely a legal determination, "[t]he inquiry at the second stage does not require the trial court to engage in any fact-finding or credibility determinations." (Internal quotation marks omitted.) *People v. Dupree*, 2018 IL 122307, ¶ 29. "Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35.

¶ 38    When a matter is decided without an evidentiary hearing, as it was in the case at bar, we review the trial court's decision under a *de novo* standard of review. *Dupree*, 2018 IL 122307, ¶ 29 (review of a second-stage dismissal is *de novo*); *People v. Hommerson*, 2014 IL 115638, ¶ 6 (review of a first-stage dismissal is also *de novo*). Under a *de novo* standard of review, the reviewing court owes no deference to the trial court's judgment or reasoning. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68. *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Carlisle*, 2019 IL App (1st) 162259, ¶ 68. In addition, a reviewing panel, such as ourselves, may affirm on any basis found in the record. *Carlisle*, 2019 IL App (1st) 162259, ¶ 69.

¶ 39                            III. Reasonable Assistance

¶ 40    Defendant raises one claim on this appeal, namely that his postconviction counsel failed to render reasonable assistance.

¶ 41    Although "there is no constitutional right to assistance of counsel during postconviction proceedings" (*People v. Cotto*, 2016 IL 119006, ¶ 29), our supreme court has found that the Act provides a postconviction petitioner with a guarantee of " 'reasonable' assistance" (*Cotto*, 2016 IL 119006, ¶ 30). "[T]he reasonable level of assistance provided for by the Act is 'less than that afforded by the federal or state constitutions.' " *Cotto*, 2016 IL 119006, ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 42    In furtherance of this guarantee of reasonable assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes certain duties on postconviction counsel at the second stage. See *People v. Knight*, 2020 IL App (1st) 170550, ¶ 38 (Rule 651(c) applies only to the second stage); *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59 (Rule 651(c) applies only to duties undertaken at the second stage). At the second stage, the rule requires appointed counsel to consult with the petitioner, to examine the trial record, and to make "any amendments to the petition filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Cotto*, 2016 IL 119006, ¶ 27. After completion of these duties, the record must reflect counsel's compliance with Rule 651(c), which can be accomplished by his or her filing a certificate stating that he or she has, in fact, "consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments." *Cotto*, 2016 IL 119006, ¶ 27.

¶ 43    "Rule 651(c) 'is merely a vehicle for ensuring a reasonable level of assistance' [citation] and should not be viewed as the only guarantee of reasonable assistance in postconviction proceedings." *Cotto*, 2016 IL 119006, ¶ 41. When alleging a lack of reasonable assistance for failure to include supporting information, a defendant must allege "what

additional information should have been included by counsel." See *Cotto*, 2016 IL 119006, ¶ 50.

¶ 44    In the case at bar, defendant does allege what additional information should have been included by counsel, namely whether the clothes that defendant was wearing when he was arrested were documented on a jail inventory sheet or in an arrest photo and whether they were available to trial counsel. However, we cannot find that postconviction counsel's assistance was, in fact, unreasonable, if we do not know whether she attempted to obtain these documents and clothes and what facts she found. Defendant is correct that the record before us lacks any indication, one way or the other, about her efforts. See *People v. Johnson*, 154 Ill. 2d 227, 247-48 (1993) (once defendant informs postconviction counsel of specific witnesses who should have been called in his defense, postconviction "counsel has an obligation to attempt to contact those witnesses").

¶ 45    Normally, the lack of a record upon which to rule for an appellant is a reason to deny his claim. *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 52 (when an appellant fails to provide a sufficient record, "we will generally presume that the resulting order was properly entered"). The burden of providing a sufficient record is on the appellant. *People v. Stephens*, 2017 IL App (1st) 151631, ¶ 10 n.3 ("It is the appellant's burden to provide a sufficiently complete record to support his or her claims."). However, the emptiness of the record created by postconviction counsel is defendant's whole point on appeal.

¶ 46    Although we cannot find that counsel was, in fact, unreasonable on the empty record before us, we are not without power to act. Illinois Supreme Court Rule 615(b) provides a reviewing court with the authority to modify the judgment or proceedings below. *E.g.*, *People v. Lawson*, 2019 IL App (4th) 180452, ¶¶ 34-35 (the appellate court is empowered under Rule

13

615(b) to remand a cause for a hearing). Pursuant to the discretion granted to us by Rule 615(b), we vacate the trial court's order and remand for further second-stage proceedings so that postconviction counsel may further amend and support the petition. After doing so, in addition to filing a new Rule 651(c) certificate, we direct the trial court and the postconviction counsel to indicate on the record what attempts counsel made to determine whether there was a photo of defendant in the clothes he wore when arrested, whether his clothing was inventoried by jail personnel, whether the clothing was in storage, and whether she is able to determine whether trial counsel had access to the clothing. The record should clearly reflect her efforts to obtain the clothing, the jail inventory sheet, and any arrest photos and her efforts to document what was, and was not, available to trial counsel at the time of the suppression hearing and trial. By these directions, we do not limit or constrain her ability to additionally amend, supplement, or support defendant's *pro se* petition.

¶ 47        Remand is required whether or not defendant's underlying claim has merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) ("remand is required where postconviction counsel failed to fulfill the duties" required of her, "regardless of whether the claims raised in the petition had merit"); *People v. Jones*, 43 Ill. 2d 160, 162 (1969) (it is error to dismiss a postconviction petition on the pleadings where there has been inadequate representation by counsel, no matter whether the underlying claim has merit).

¶ 48                                CONCLUSION

¶ 49        For the foregoing reasons, we vacate the second-stage dismissal and remand with directions for further second-stage proceedings.

¶ 50        Vacated and remanded, with directions.

**No. 1-19-0263**

| | |
|---|---|
| **Cite as:** | *People v. Jackson*, 2021 IL App (1st) 190263 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-CR-14618; the Hon. Catherine M. Haberkorn, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Stephanie T. Puente, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Leslie Billings, Assistant State's Attorneys, of counsel), for the People. |