2021 IL App (2d) 191054-U
No. 2-19-1054
Order filed September 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-1443 |
| JAMES DEVON ANDERSON, | ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly dismissed, at the first stage of postconviction review, defendant's claim that his trial counsel was ineffective for not (1) honoring his request to ask the trial court to instruct the jury on second-degree murder and (2) investigating an alibi defense. First, contrary to defendant's position, the decision to request a second-degree murder instruction is not the personal right of a defendant. Second, the evidence that defendant wanted counsel to produce at trial would not have supported a defense and, in fact, would have contradicted the alibi testimony that defendant did present.

¶ 2    Defendant, James Devon Anderson, appeals the summary dismissal of his petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). He contends that

his trial counsel was ineffective for failing to (1) request a jury instruction on second-degree murder and (2) investigate and call alibi witnesses. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with first-degree murder (720 ILCS 5/9-1(a)(1) (West 2010)) for the shooting death of Paul Ezop in Rockford in December 2011.

¶ 5     Before trial, defendant's initial counsel filed with the trial court on June 8, 2013, a discovery answer stating that defendant would be relying on an alibi defense, namely that defendant was with Cheryl Williams, his live-in girlfriend, in Indiana during the shooting. On July 16, 2013, counsel filed another discovery answer stating that defendant would be presenting the alibi defense that, during the shooting, he was in Griffith, Indiana, celebrating his nephew's birthday. However, defendant's subsequent counsel told the court that defendant was *not* claiming an alibi. Rather, the defense would proceed on the theory that the State's case was "highly circumstantial" because there were "no eyewitnesses to the murder."

¶ 6     At the July 2015 jury trial, the State presented evidence that defendant shot Ezop near an auto parts store in Rockford around 6:30 p.m. on December 8, 2011. A witness testified that she had seen a car that looked like an Oldsmobile speed up and cut in front of a maroon SUV. The driver of the car was angry, drove erratically, made hand movements, and shouted profanity. Another witness, who lived near the auto parts store, saw an Oldsmobile follow a dark-colored SUV at a high rate of speed. The vehicles stopped, and the witness saw one man walk up to the other and then heard three shots. The witness saw one man fall, and the SUV then quickly fled.

¶ 7     Thomas Reed, who worked at the auto parts store, testified that he heard four gunshots and went outside. He saw a car blocking an entryway to the store and a man lying on the ground a few feet in front of the car. He saw an SUV driving nearby but was unable to describe its color because

he was color blind. Yet another witness heard gunshots and saw an SUV flee north. The witness followed the SUV and later saw it parked at a condo but could not get a license plate number. The condo was later connected with defendant via his landlord.

¶ 8     Ezop sustained two gunshot wounds to his left shoulder and left side of his chest. Bullet fragments were recovered from his back. He died from the gunshot to his chest. He had a blood-alcohol level of 0.138, which was over the legal limit.

¶ 9     Police later learned that defendant was in jail on an unrelated matter. Based on monitoring of defendant's jail phone calls, the police searched a garage and impounded a maroon SUV. The police learned that the SUV's owner had previously authorized defendant to use it. They also recovered a Glock firearm and ammunition from defendant's associates. An expert testified that bullets recovered from Ezop were fired from a Glock. I-Pass records associated with defendant and the SUV placed the vehicle at Route 173 and I-90 near Rockford at 6:52 p.m. on the day of the shooting. The vehicle then proceeded east toward Indiana.

¶ 10    Despite defense counsel's pretrial declaration that defendant would present no alibi defense, defendant called his nephew Lashawn Rush, who testified that defendant was at a party in Griffith, Indiana, during the shooting.[1] When Rush arrived at the party between 3 p.m. and 4 p.m., defendant was already there with his girlfriend, "Amber." Rush left the party around 11 p.m.

---

[1] Rush stated that the party was in "Griffin," Indiana, but defendant's July 16, 2013, discovery answer claimed that he was at a party in "Griffith," Indiana. Also, in his postconviction affidavit, defendant claimed that he was at a party in Griffith and that he booked a hotel room that night in nearby Merrillville, Indiana.

¶ 11    During closing arguments, defense counsel argued that the State failed to prove that defendant was the shooter. Counsel stressed the absence of eyewitness testimony linking defendant to the shooting. Counsel also argued that defendant was in Indiana at the time of the shooting. At the jury instruction conference, the court asked defendant, "[D]id [counsel] put on all the evidence that you want them to put on?" Defendant replied, "Yes."

¶ 12    The jury found defendant guilty, and the trial court denied his motion for a new trial. At sentencing, defense counsel presented a witness who testified that defendant was "not a killer" and did not kill Ezop. Defendant also made a statement in which he maintained his innocence. Defense counsel presented no evidence concerning provocation; counsel argued instead that defendant did not commit the crime. In discussing the statutory factors in mitigation, the trial court found that defendant did not act under a strong provocation. The court stated that any provocation of defendant was no greater than what is experienced daily in an urban environment, "where someone cuts us off or flips us off or gestures or yells at us." The court also found that the conduct was not induced or facilitated by another person. In that light, the court sentenced defendant to 60 years' incarceration. Defense counsel moved to reconsider the sentence, alleging that it was excessive. Counsel did not argue that the court failed to consider provocation as mitigation. The court denied the motion.

¶ 13    Also at sentencing, defendant addressed the court and asserted that his trial counsel was ineffective. He claimed that counsel did not review discovery materials with him and instead relied on notes from prior counsel. He said, "I didn't get a chance to know what was in the discovery." He also argued that counsel "failed to abide by my decisions concerning objectives of my representation." Defendant provided some examples but did not claim that he asked counsel to request a second-degree murder instruction or that counsel failed to investigate alibi witnesses.

When asked if there was anything else, defendant said, "No, sir. That's it." The court found that defendant's ineffective-assistance claims lacked merit.

¶ 14    Defendant appealed, arguing that the trial court erred by determining at sentencing that defendant was not under a strong provocation when he committed the shooting. We affirmed, holding that the trial court did not err. *People v. Anderson*, 2018 IL App (2d) 151217-U.

¶ 15    On November 11, 2019, defendant filed a *pro se* postconviction petition, alleging, among other things, that his trial counsel was ineffective for failing to (1) honor his request to ask the trial court for a second-degree murder instruction and (2) investigate alibi witnesses. He alleged that he was entitled to a jury instruction on second-degree murder because the evidence showed that Ezop initiated the aggression, thus provoking the shooting. He also alleged that he told counsel that he was at a hotel in Merrillville, Indiana, with Williams on the day of the shooting. However, counsel failed to send an investigator to the hotel or contact Williams. Defendant alleged that he could not get an affidavit from Williams because he was incarcerated, indigent, and could not locate her without assistance from the court. Defendant included with his petition the June 8, 2013, discovery answer in which his initial counsel stated that defendant would rely on the defense that he was with Williams in Griffith, Indiana, during the offense. Defendant also included an affidavit stating that, on the day of the shooting, he left his apartment early in the morning and drove to Indiana for a party in Griffith; Williams remained at the apartment because she had errands to run. They agreed to meet later in Indiana. Williams traveled separately and met defendant at the party in Griffith around 9 p.m. They left the party together around 11 p.m. and rented a hotel room. Defendant averred that he gave trial counsel information about Williams and the hotel, but counsel failed to investigate.

¶ 16    The trial court summarily dismissed the petition as frivolous and patently without merit. Defendant appeals.

¶ 17                                    II. ANALYSIS

¶ 18    Defendant contends that he stated an arguably meritorious claim that his trial counsel was ineffective for failing to (1) honor his request to ask the trial court for a second-degree murder instruction and (2) investigate his claim that he was with Williams at a hotel in Indiana during the shooting.

¶ 19    The Act provides a remedy to defendants who have suffered substantial violations of their constitutional rights. See 725 ILCS 5/122-1 (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001); *People v. Ramirez*, 162 Ill. 2d 235, 238-39 (1994). There are three stages to proceedings under the Act. *Edwards*, 197 Ill. 2d at 244. At the first stage, a defendant needs to present only limited detail in the petition. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The trial court independently reviews the petition within 90 days of its filing and determines whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Edwards*, 197 Ill.2d at 244. If the petition is not dismissed at this stage, it advances to the second stage for the appointment of counsel. *People v. Mauro*, 362 Ill. App. 3d 440, 441 (2005). At the second stage, counsel may amend the petition, and the State may file a motion to dismiss or an answer. *Id.* If the trial court does not dismiss or deny the petition at the second stage, the proceeding advances to the final stage, where the trial court conducts an evidentiary hearing. *Id.* at 441-42.

¶ 20    Because defendant's petition was dismissed at the first stage of the postconviction process, we must determine whether the petition was frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016); *Ramirez*, 162 Ill.2d at 239-40. A petition is frivolous or patently without merit if it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. "A petition

which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* At this stage, the court treats allegations of fact as true so long as those allegations are not affirmatively rebutted by the record. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. A petitioner needs to state only the gist of a meritorious claim to survive first-stage dismissal. *Edwards*, 197 Ill. 2d at 244. We review the summary dismissal of a petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 21    Under the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), a defendant's ineffective-assistance claim must show that his counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

> "Counsel's performance is measured by an objective standard of competence under prevailing professional norms. Further, in order to establish deficient performance, the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. Matters of trial strategy are generally immune from claims of ineffective assistance of counsel." (Internal quotation marks and citations omitted.) *People v. Manning*, 241 Ill. 2d 319, 327 (2011).

Because the defendant must satisfy both prongs of the *Strickland* test, the failure to establish either is fatal to an ineffectiveness claim. *People v. Jackson*, 2020 IL 124112, ¶ 90.

¶ 22    The State initially contends that defendant forfeited his ineffectiveness claims, or that they are rebutted by the record, because he did not raise them in the trial court when given the opportunity. The State notes that defendant did not mention a second-degree murder instruction at the instruction conference and did not mention Williams when the trial court performed a

preliminary *Krankel* inquiry during sentencing. However, "[a]n omission or absence of an assertion at trial is not a positive rebuttal of an averment in a postconviction proceeding." *People v. McGee*, 2021 IL App (2d) 190040, ¶ 41. Also, a defendant does not forfeit issues not raised at a *Krankel* inquiry. *Id.* Moreover, since defendant was represented by counsel at the jury instruction conference, it would not be surprising if defendant chose not to speak even if he believed that a second-degree murder instruction was appropriate. Further, at the *Krankel* inquiry, defendant claimed that counsel "failed to abide by my decision concerning objectives of my representation." Defendant specifically alleged that his trial counsel did not review discovery materials with him. Significantly, those materials would have reminded trial counsel and defendant that his initial counsel planned to present an alibi defense involving Williams. We move to the merits of defendant's ineffectiveness claims.

¶ 23    Defendant first contends that he presented an arguable claim of ineffectiveness based on trial counsel's failure to honor defendant's request to seek a second-degree murder instruction on the theory that the shooting was the result of serious provocation. He contends that, under *People v. Brocksmith*, 162 Ill. 2d 224 (1994), he had an absolute right to decide whether such an instruction should be submitted. Defendant is mistaken.

¶ 24    A defendant can be found guilty of second-degree murder only if the State first proves all elements of first-degree murder. *People v. Neasom*, 2017 IL App (1st) 143875, ¶ 39 (citing 720 ILCS 5/9-2(a), (c) (West 2010)). The defendant then has the burden of proving a mitigating factor by a preponderance of the evidence. *Id.* (citing 720 ILCS 5/9-2(c) (West 2010)). There are two possible mitigating factors: (1) an unreasonable belief that self-defense is justified, or (2) the presence of an intense passion resulting from serious provocation by the victim. *Id.* (citing 720 ILCS 5/9-2(a)(1), (a)(2) (West 2010)). "[S]erious provocation may arise from substantial physical

injury or substantial physical assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse." *Id.*

¶ 25    "Included in the rights belonging exclusively to the defendant is the right to decide whether to submit an instruction on a lesser-included offense." *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 78 (citing *Brocksmith*, 162 Ill. 2d at 229). We previously held in *People v. DuPree*, 397 Ill. App. 3d 719, 734-35 (2010) that *Brocksmith* applied to the decision to request a second-degree murder instruction. However, our supreme court has since distinguished *Brocksmith* and held that it does not apply to a second-degree murder instruction, because second-degree murder is not a lesser-included offense of first-degree murder. *People v. Wilmington*, 2013 IL 112938, ¶ 48. Instead, it is a "lesser-mitigated" offense. (Emphasis omitted.) *Id. Wilmington* distinguished first- and second-degree murder from the principle underlying *Brocksmith*, stating:

>"While a defendant who tenders a lesser-included offense instruction exposes himself to potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction, that is not the case with the tender of a second-degree murder instruction, as a defendant can only be found guilty of second-degree murder if the State has first proven all the elements of first[-]degree murder." (Internal quotation marks and citation omitted). *Id.*

"Defendants who ask for a lesser-included instruction are exposing themselves to additional risk, akin to other risk-taking decisions like whether to take a plea or testify at trial." *Zareski*, 2017 IL App (1st) 150836, ¶ 78. "The decision is a personal one. But for second-degree murder, there is no additional risk, and that puts this decision in the much bigger category of strategic choices to be made by the defense attorney." *Id.*

¶ 26    Here, neither party discusses *Wilmington,* but it controls. Defendant did not have the personal right to decide whether he wanted a second-degree murder instruction. Instead, the matter was one of trial strategy. In that regard, defendant never claimed that he shot Ezop because of serious provocation. Instead, his two-fold defense theory was that he was in Indiana during the offense and that, in any event, the State presented inadequate evidence identifying him as the shooter. A second-degree murder instruction based on provocation would have been incompatible with that defense theory. Notably, defendant does not argue that counsel's choice of defense was poor strategy. He merely argues that he had an absolute right to request the second-degree murder instruction. He did not. Thus, counsel did not provide deficient representation by declining to seek a second-degree murder instruction.

¶ 27    Defendant next contends that counsel's representation was deficient in that counsel failed to investigate his claim that he was with Williams at a hotel in Indiana during the shooting.

¶ 28    "It is well-established that the choice on what witnesses to call 'is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant.' " *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 42 (quoting *People v. Peterson*, 2017 IL 120331, ¶ 80). "However, trial counsel has a duty to conduct reasonable investigations into possible defenses." *Id.* "The failure to interview known witnesses can indicate incompetence when their testimony could be exonerating." *Id.* A decision not to investigate is directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment. *Id.*

¶ 29    Even if trial counsel's representation was deficient for failing to investigate as defendant alleges he should have, defendant's claim would still fail if that omission did not cause prejudice. To determine whether counsel's failure to investigate prejudiced the defendant, we must look at the evidence presented at his trial. *Id.* ¶ 44. " 'Prejudice is demonstrated if there is a reasonable

probability that, but for counsel's deficient performance, the result of the proceeding would have been different.' " *Id.* (quoting *People v. Makiel*, 358 Ill. App. 3d 102, 105-06 (2005)). " 'Whether the failure to investigate constitutes ineffective assistance of counsel is determined by the value of the evidence not presented at trial and the closeness of the evidence that was presented at trial.' " *Id.* (quoting *People v. Harmon*, 2013 IL App (2d) 120439, ¶ 26).

¶ 30    Here, the testimony from Williams and evidence about the hotel stay would not be exonerating, and thus defendant cannot show prejudice. Defendant could well have committed the crime in Rockford at 6:30 p.m. and traveled to Griffith, Indiana, in time for Williams to see him at the party when she arrived around 9 p.m. Defendant argues that the alleged testimony from Williams would have corroborated Rush's testimony, but that is false. Rush testified that, when he arrived at the party between 3 p.m. and 4 p.m., defendant was there with his girlfriend "Amber." Rush was at the party until 11 p.m., but he did not mention Williams, defendant's supposed girlfriend at the time, who allegedly would have testified that she arrived at the party around 9 p.m. Also, the fact that defendant and Williams checked into a Merrillville hotel at 11 p.m. is irrelevant to whether defendant was in Rockford at 6:30 p.m. Thus, even if Williams and hotel employees testified consistently with defendant's affidavit, their testimony would not have accounted for defendant's location at the time of the crime but in fact would have contradicted Rush, the only alibi witness, as to whom defendant was with at the party. Accordingly, defendant cannot show ineffective assistance of counsel on this issue.

¶ 31                            III. CONCLUSION

¶ 32    The trial court did not err in summarily dismissing defendant's postconviction petition. Accordingly, we affirm the judgment of the circuit court of Winnebago County.

¶ 33    Affirmed.