NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220490-U

NO. 4-22-0490

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JAMES D. ANDERSON, | ) | No. 12CF1443 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice DeArmond and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court remanded for the trial court to consider defendant's actual innocence claim under the standard applying to such claims and to consider the affidavit sent to the State but not filed with the motion for leave to file a successive post-conviction petition.

¶ 2    In 2015, defendant, James D. Anderson, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)). The jury found defendant, with the intent to kill, personally discharged a firearm, killing Paul Ezop (730 ILCS 5/5-8-l(a)(1)(d)(iii) (West 2010)). Defendant filed an initial petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)) in 2019. On May 12, 2022, defendant filed a motion for leave to file a successive petition under the Act, alleging, *inter alia*, he had the affidavit of an eyewitness who would testify he saw a person known to him as "Pierre" shoot Ezop. Although the proposed petition stated the witness's affidavit was attached as an exhibit, the trial court did not receive it. However, the State

advised defendant had sent it such an affidavit and offered to file it. The court declined the offer and denied defendant's motion, ruling defendant had not shown "cause or prejudice."

¶ 3        We remand the matter, and we order the trial court to (1) allow the State to file the affidavit it received from defendant, (2) consider defendant's actual innocence claim under the appropriate standard, and (3) when addressing this claim, consider the newly filed affidavit.

¶ 4                                I. BACKGROUND

¶ 5        The State charged defendant with Ezop's murder under eight theories, including that defendant, with intent to kill, personally discharged a firearm which caused Ezop's death.

¶ 6                            A. The Evidence at Trial

¶ 7        Defendant had a jury trial. The evidence showed the shooting occurred at about 6:30 p.m. on December 8, 2011, on a side street near O'Reilly's Auto Parts (O'Reilly's) facing Riverside Boulevard in Rockford, Illinois. Some evidence suggested the shooting was a road-rage incident.

¶ 8        The State presented circumstantial evidence linking defendant to the shooting. First, the evidence linked defendant to the vehicle driven by the shooter. The evidence overwhelmingly showed defendant controlled, but did not own, a maroon Chevy Tahoe Z71. However, he was known to use several vehicles. Several witnesses placed a maroon sport utility vehicle (SUV) at the scene. Trent Farrall, the passenger in a vehicle stopped at a gas station diagonally across from O'Reilly's, heard shots and saw a maroon SUV leave the scene rapidly. The SUV drove directly past him. He and the driver of the vehicle he was in attempted to pursue the SUV, which he identified as a Tahoe Z71, but the two lost sight of the vehicle. While returning from the pursuit, Farrall spotted what he was certain was the same vehicle pulling out of the driveway of an apartment building not far from the scene of the shooting. Farrall's evidence led

the police indirectly to an apartment rented by defendant at which he kept a maroon Tahoe to which he did not have title. Witnesses described defendant taking steps consistent with an intent to conceal the Tahoe after the shooting.

¶ 9            Second, witnesses linked defendant to a .40-caliber Glock semiautomatic handgun. Comparison of the marks this gun produced on cartridge cases indicated it was the source of three empty cartridge cases found at the scene of the shooting. Defendant took the gun and a box with ammunition to a friend's house in Chicago after the shooting. While the investigation of Ezop's death was in progress, defendant was arrested on charges unrelated to this case and held in the Winnebago County jail. While in jail, defendant made a series of calls in which he used coded language, which the recipients understood as requests to take further action to conceal the gun and the ammunition.

¶ 10           Third, a tollway transponder associated with an account in defendant's name was recorded on December 8, 2011, heading east from the Rockford area to the Indiana border; it was first recorded near Rockford at 6:52 p.m.

¶ 11           Defendant presented an alibi defense. Defendant's nephew, Lashawn Rush, testified his grandmother had a birthday party for him at her home in Indiana on December 8, 2011. When Rush arrived at the party between 3 and 4 p.m., defendant was already present. Defendant stayed at the party into the evening.

¶ 12           The jury found defendant guilty on all counts. The trial court sentenced defendant to 60 years' imprisonment on the count alleging intent to kill with personal use of a firearm as the cause of death. Defendant filed a direct appeal, challenging only his sentence, and the Second District Appellate Court affirmed. *People v. Anderson*, 2018 IL App (2d) 151217-U.

¶ 13                              B. The Original Postconviction Petition

¶ 14 In November 2019, defendant filed an initial postconviction petition in which he asserted, among other things, counsel had been ineffective for failing to investigate the testimony of Cheryl Williams, who defendant alleged would be an alibi witness. Williams would testify she lived with defendant in Loves Park. She saw defendant leave their apartment on the morning of December 8, 2011, to drive to Indiana. She also would testify she rode to Rush's birthday party in Indiana with defendant's friend, Pierre Curry. Curry picked her up on the evening of December 8 in a maroon Tahoe. They drove to the party in Indiana, where she joined defendant. Defendant asserted: "Ms. Williams['s] testimony would have been crucial during Trial because she would've testified that she had first[-]hand knowledge as to who was driving the Tahoe on the night in question." The trial court dismissed this petition as frivolous and patently without merit. The dismissal was affirmed on appeal. *People v. Anderson*, 2021 IL App (2d) 191054-U.

¶ 15 C. Defendant's Motion for Leave to File a Successive Petition

¶ 16 On May 6, 2022, defendant filed a motion for leave to file a successive postconviction petition. In his proposed petition, he asserted, among other things, he was actually innocent of the murder. He asserted DeMario Thompson, whom defendant had met in prison, could offer exonerating testimony. According to the proposed petition, Thompson, in an "[a]ffidavit dated March 16, 2022, as attached hereto as Exhibit #2," had averred, on the evening of December 8, 2011, he had witnessed a person who was not defendant shooting a man near the Riverside O'Reilly's. However, no such affidavit was included in defendant's filing; the filing includes an exhibit No. 1 but not an exhibit No. 2.

¶ 17 According to defendant's description of the affidavit, Thompson was prepared to testify he was, at the relevant time, in his vehicle in the O'Reilly's parking lot waiting for the arrival of a marijuana dealer. Although defendant's handwritten petition is not always clearly

legible, it appears Thompson knew the dealer as "Pierre." (We note, however, defendant's brief provides the name as "Pierce." While a few instances of the name in defendant's petition could be read as "Pierce," we deem the majority to unambiguously read as "Pierre." For the sake of clarity, we will use "Pierre.") Pierre arrived in a maroon Chevy Tahoe at about 6 p.m. Thompson flashed his lights at him. A light blue sedan was following Pierre's Tahoe. It stopped, and a white male jumped out and started cursing at Pierre. Pierre opened his vehicle door, pointed a gun at the white male, and shot him three times.

¶ 18    During a May 19, 2022, hearing, the trial court indicated it was denying the petition:

"THE COURT: All right. *** [Defendant has] *** filed a motion for leave to file a successive petition for post-conviction relief.

The Court has reviewed the defendant's motion for leave to file a successive petition for postconviction relief. The defendant fails to demonstrate cause or prejudice. The motion for leave to file a successive petition for post-conviction relief is heard and denied. Please prepare a scratch order and send it to the defendant.

MR. ROBINSON [(STATE'S ATTORNEY)]: Will do, Judge."

However, before preparing the order, the State brought to the court's attention the following:

"MR. ROBINSON: Your Honor, if I may? I know the Court just denied [defendant's] motion, but just in the interest of candor to the—and just so the Court is aware. He sent a copy of some affidavits to our office. He did not send a copy of his motion. One of the affidavits that he references in that motion was sent to our office, but not attached to what he filed. It is not in the Court record. I have a copy of it for the record if the Court would like. I just wanted to let you know about that.

> THE COURT: Thank you for your candor. I'm going to rule on the pleadings that were filed. Thank you.
>
> MR. ROBINSON: Thank you, Judge. I'll prepare the order."

The court denied defendant's motion and the affidavit is not part of the record.

¶ 19          This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21          On appeal, defendant asserts the trial court should have granted leave for him to file his successive petition because he adequately stated a claim of actual innocence. He notes a defendant making a claim of actual innocence does not have to satisfy the cause-and-prejudice standard the court applied, and instead should have considered whether defendant's petition "set forth a colorable claim of actual innocence." *People v. Edwards*, 2012 IL 111711, ¶ 31. Alternatively, he asserts we should remand the matter because the court improperly denied the State's offer to supplement the record with the affidavit it received.

¶ 22          The State responds, arguing, although the trial court used the wrong standard when denying defendant's claim, we can affirm on any grounds supported by the record. It contends we may affirm either because defendant failed to file the affidavit supporting his claim (see 725 ILCS 5/122-2 (West 2022)) or because the evidence was not newly discovered and not so sufficiently conclusive it would probably change the results on retrial (see *People v. Robinson*, 2020 IL 123849, ¶ 47).

¶ 23          We may not reverse outright the denial of defendant's motion without knowing the contents of Thompson's affidavit. Conversely, we may not affirm the denial based on the absence of the affidavit given how strongly the record shows the inadvertence of defendant's failure to include it. Moreover, without the affidavit, it is premature to determine whether the evidence is

insufficiently conclusive. It is similarly premature to determine whether the proposed petition stated a colorable claim of actual innocence in the absence of the affidavit. For the reasons that follow, the trial court abused its discretion when it failed to either allow the State to file the affidavit or offer defendant an opportunity to correct the omission.

¶ 24                                      A. The Standard of Review

¶ 25        We review *de novo* the trial court's denial of a defendant's motion for leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13. When we address a matter *de novo*, we perform the same analysis a trial court would perform. *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38. Therefore, we may affirm on any basis the record supports. *Id.*

¶ 26                                         B. Actual Innocence

¶ 27        Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (2022)) provides a defendant may file only one petition under the Act unless he or she has leave of court to file a successive petition. Further, this section provides the trial court should grant leave only if the defendant "demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* However, our supreme court has created an exception to the cause-and-prejudice requirement for successive petitions if the petition sets out a "colorable claim of actual innocence." *Edwards*, 2012 IL 111711, ¶¶ 23, 31. To set out a *claim* of actual innocence, a defendant must provide newly discovered evidence in support of the claim; such evidence must be material and noncumulative, and it must be "of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 32. To set out a merely *colorable* claim of actual innocence, a defendant must "raise the probability that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* ¶ 33.

¶ 28    As the State concedes, defendant's motion to file a successive petition was based in part on a proposed petition asserting he was actually innocent and could demonstrate this through eyewitness testimony. This cannot be framed as anything but an attempt to state a claim of actual innocence. The trial court thus erred in applying the cause-and-prejudice standard. It should have instead addressed whether the proposed petition stated a colorable claim of actual innocence. The denial can thus be affirmed, if at all, only on other grounds.

¶ 29                    C. Alternative Bases for Affirming

¶ 30                    1. *Failure to Attach the Affidavit*

¶ 31    The State argues the record supports affirming the motion's denial based on the absence of the affidavit. Although the State's argument is superficially plausible, we disagree.

¶ 32    Certainly, if the proposed petition indicated defendant's claim lacked any supporting evidence, we could affirm its dismissal on this basis. Section 122-2 of the Act requires a petitioner to "have attached [to the petition] affidavits, records, or other evidence supporting its allegations or *** state why the same are not attached." 725 ILCS 5/122-2 (West 2022). A failure to attach a necessary affidavit or explain its absence by itself justifies a petition's summary dismissal. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 33    Here, however, the record strongly implies defendant, had he been alerted to this basis for dismissal, would have had a basis for a successful motion for leave to correct the proposed petition to include the missing affidavit. Defendant's proposed petition stated the affidavit was attached as exhibit No. 2, and the State received an affidavit which was not included in the material filed. Trial courts have inherent authority to control their courtrooms and their dockets. *Mason v. Snyder*, 332 Ill. App. 3d 834, 842 (2002). The law would be intolerably rigid if courts could never allow parties to correct clearly inadvertent omissions. Indeed, nothing in the Act bars a court from

- 8 -

allowing such a correction. See *Bailey*, 2017 IL 121450, ¶ 29 ("[G]eneral civil practice rules and procedures apply only to the extent they do not conflict with the *** Act."). Thus, the trial court could have allowed defendant to correct the omission of the affidavit.

¶ 34                            a. Declining the State's Offer to File the Affidavit

¶ 35        Indeed, under the circumstances, we conclude the trial court would have erred by declining to allow *defendant* to correct his petition. To be sure, the matter would have been one for the court's discretion. It would fall under the rubric of " 'decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial.' " *People v. Radojcic*, 2013 IL 114197, ¶ 33 (quoting *In re D.T.*, 212 Ill. 2d 347, 365 (2004)). "Review for abuse of discretion is proper when the trial court *** must, for lack of a better phrase, make a judgment call." *People v. Chambers*, 2016 IL 117911, ¶ 75. Given the obvious inadvertence of the omission, as shown by the State's receipt of the affidavit and the proposed petition's reference to the affidavit as an attached exhibit, failure to allow the correction would be arbitrary and unduly harsh. Our supreme court recognized freestanding claims of actual innocence to avoid the fundamental unfairness of imprisonment of the innocent. *People v. Washington*, 171 Ill. 2d 475, 487 (1996). It is thus contrary to the interests of justice to impose harsh and unnecessary barriers to considering evidence of innocence when a defendant attempts to present it in a proposed petition raising an actual innocence claim.

¶ 36        For the same reasons, the trial court abused its discretion by declining the State's offer to file the affidavit it received from defendant. The State's representation it had received an affidavit missing from the court filing confirmed defendant's failure to file the affidavit with the court was simply inadvertent. Further, the State's offer demonstrated it would not object to the

- 9 -

court considering the affidavit as part of the petition. Thus, no reason existed for the court to decline confirming the affidavit was Thompson's and accepting it as a supplement to the petition.

¶ 37　　　　　　　　b. The Timing of the State's Offer to File the Affidavit

¶ 38　　　　　The State argues, because the State did not offer to file the affidavit until after the trial court had denied defendant's motion, the court could not accept the affidavit as a supplement to the record. However, the State is incorrect regarding when the court denied the motion. Postconviction petitions are civil in nature; thus, general civil practice rules and procedures are applicable to the extent they do not conflict with the Act. See *Bailey*, 2017 IL 121450, ¶ 29 ("[G]eneral civil practice rules and procedures apply only to the extent they do not conflict with the *** Act."). Illinois Supreme Court Rule 272 (eff. Jan 1, 2018), concerning when a civil judgment is entered, provides: "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge *** the judgment becomes final only when the signed judgment is filed." This rule is consistent with the Act. Therefore, the court had not made final its denial of defendant's motion when the State alerted the court to the affidavit's existence. Thus, the court could have allowed the State to file the affidavit and could have considered it before it denied the motion.

¶ 39　　　　　　　　2. *Evidence Not Newly Discovered*

¶ 40　　　　　The State argues Thompson's affidavit, as described in the proposed petition, was not new evidence. It contends defendant's original postconviction petition shows he already had information making Pierre Curry an alternative suspect in Ezop's shooting. It points out the first petition alleges Williams would identify Curry as the person driving "*the* Tahoe on the night in question." (Emphasis added.) It asserts, because Curry was a friend, defense counsel could have easily obtained evidence of his whereabouts by speaking to witnesses like Williams.

¶ 41    We disagree. Newly discovered evidence, for purposes of an actual innocence claim, is "evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence." *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009). We assume for the sake of argument Thompson's "Pierre" was the same person as Pierre Curry. However, the record suggests Thompson's only contemporaneous connection to defendant was a mutual acquaintance with Pierre; although defendant described Pierre as a friend, to Thompson, Pierre was simply someone from whom he purchased cannabis. Thus, defendant's ties to Pierre were unlikely to allow defense counsel to discover Thompson was a witness to the shooting. Anyone aware of the eyewitnesses to the shooting unknown to the police would probably be someone who was keeping secrets. Such a person would most likely be either someone present at the shooting or a confidante of the shooter. An investigation might have chanced upon someone who knew Thompson, but such a result would be a matter of good fortune, not due diligence.

¶ 42              3. *Evidence Lacks Conclusive Character*

¶ 43    The State argues evidence introduced at trial directly contradicts Thompson's account of seeing Pierre shoot Ezop. It argues appellate courts, in several recent unpublished cases, have held ballistic evidence tying a defendant to a weapon used in a shooting can conflict with new evidence to the extent no trier of fact could accept the new evidence. We disagree.

¶ 44    Given the particular kind of circumstantial evidence used to convict defendant, we deem it necessary to see the affidavit before deciding what effect Thompson's testimony would have on a trier of fact. The evidence at trial strongly linked defendant to the Tahoe seen at the shooting and the .40-caliber Glock used to shoot Ezop. Further, the evidence allowed a strong inference defendant was aware the gun and the vehicle might incriminate him. However, the evidence did not exclude every explanation of the facts consistent with his innocence. The

evidence he had links to the shooting was overwhelming, but such evidence could not perfectly exclude a shooter with access to the Tahoe and the gun. If the State is correct in suggesting Thompson's "Pierre" was the "Pierre Curry" defendant identified as a friend, Thompson's affidavit might offer defendant a theory of the case fitting into the gaps in the State's evidence.

¶ 45 We note the shooting had other eyewitnesses. Without viewing the affidavit itself, we cannot properly address the extent to which other eyewitness testimony might conflict with Thompson's affidavit. Therefore, it is premature to determine Thompson's affidavit was not of such conclusive character it would probably change the result on retrial.

¶ 46 D. Defendant's Actual Innocence Claim

¶ 47 Defendant argues, even without the affidavit, we can determine his proposed petition stated a colorable claim of actual innocence. We disagree. Section 122-2 requires a petitioner to file supporting evidence with the petition or explain why it is not available. Defendant, for reasons we deem to be correctable, did not meet this requirement. We will not speculate concerning the accuracy of defendant's summary of Thompson's affidavit when defendant's proposed petition was based on the affidavit itself.

¶ 48 As we can neither affirm the motion's denial based on the failure to attach the affidavit nor address the motion's merits without the affidavit, we must remand the matter. For the reasons stated, the trial court on remand must consider Thompson's affidavit. Accordingly, we direct the court to allow the filing of the affidavit offered by the State, which the court should confirm to be Thompson's affidavit. In the event it is not Thompson's affidavit, the court should direct the clerk to advise defendant his motion was received without Thompson's affidavit and further advise defendant he may file the affidavit. The court should consider defendant's motion

under the standard of *Edwards* for a motion seeking to file successive petition raising a claim of actual innocence; in so doing, it must consider Thompson's affidavit.

¶ 49                                III. CONCLUSION

¶ 50            For the reasons stated, we vacate the denial of defendant's motion for leave to file a successive postconviction petition and remand the cause with instructions.

¶ 51            Vacated and remanded with instructions.