2021 IL App (1st) 181341-U

No. 1-18-1341

Order filed October 25, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 4770 |
| | ) | |
| JOSHUA KASZUBA, | ) | Honorable |
| | ) | Kevin Michael Sheehan, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Reverse and remand post-conviction counsel failed to comply with Illinois Supreme Court Rule 651(c), where counsel did not examine the trial exhibit underlying defendant's claim.

¶ 2    Joshua Kaszuba appeals from the circuit court's second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act. Kaszuba argues that post-conviction counsel did not provide reasonable assistance where she failed to review a trial exhibit underlying one of his claims and failed to amend his petition to present two other claims. We agree that post-conviction counsel

provided unreasonable assistance by not examining the exhibit and, so, need not discuss Kaszuba's additional claims. Accordingly, we vacate and remand.

¶ 3                                          Background

¶ 4      A jury convicted Kaszuba of first degree murder (720 ILCS 5/9-1(a)(1) (West 2004)) for the shooting death of Eric Cocchia. The trial court imposed the minimum term of 20 years' imprisonment, plus a mandatory 25-year enhancement for personally discharging a firearm which proximately caused Cocchia's death (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2004)). We recount the facts to the extent necessary to resolve the issues in this appeal.

¶ 5      The State's pretrial answer to discovery provided that any "lineup photographs" or photographs "used in connection with any photographic identification" would be made available to the defense for inspection.

¶ 6      Before trial, Kaszuba filed a motion to suppress his inculpatory statements to police as involuntary because of his intoxication from cocaine. At the suppression hearing, Kaszuba testified that he secreted cocaine and marijuana into the interrogation room. Officers caught him smoking the marijuana but did not discover the cocaine he ingested on about 20 occasions in the interrogation room and bathroom before giving inculpatory statements, including a videotaped statement. The court denied the motion.

¶ 7      At trial, Kevin Jeffrey and Jose Rodriguez testified that on the evening of January 23, 2004, they drove to a gas station with Cocchia in Cocchia's car. There, Cocchia conversed with a man wearing a white winter coat and blue jeans, whom Jeffrey identified in court as Kaszuba. Kaszuba then entered a red Chevy Lumina driven by a dark-skinned man in a black coat.

¶ 8    Jeffrey drove Jose and Cocchia to his apartment, about half a block from the gas station. (Because Jose Rodriguez and another witness, Daniel Rodriguez, share a surname, we use their first names.) Jose left in a friend's car. Jeffrey saw the same red Lumina pass as he and Cocchia walked to Jeffrey's building. Cocchia used the restroom in Jeffrey's second-story apartment and left. A moment later, Jeffrey heard four or five gunshots and looked out a window toward a school parking lot. Kaszuba, wearing the same coat, stood over a body and shot downwards. A dark-skinned person wearing a dark coat with a hood and black hat was also there. Jeffrey ran outside and saw Cocchia on the ground, covered in blood. Kaszuba and the other person were gone.

¶ 9    Around 3:30 a.m., Jeffrey identified Kaszuba to police in a photo array as the shooter and the person he saw at the gas station. He later identified Kaszuba in a lineup as the shooter and identified a photograph of the lineup at trial, which the trial court admitted into evidence.

¶ 10    Francisco Santiago testified that he and others were drinking in a car in a parking lot on Noble around 11 p.m. that evening. A man walked behind Santiago's car, and another man in a white jacket, whom Santiago identified as Kaszuba, got out of a black Chevy Blazer and approached the man. Kaszuba searched the man, drew a firearm, and threatened to kill him. The man begged for his life, and Kaszuba shot him twice. Another person, in a black hoodie, got out of the Blazer, told Kaszuba to shoot the person in the head to ensure he died, then took the firearm and shot the person in the head multiple times. Kaszuba and the other shooter returned to the Blazer and drove away. Santiago called the police and spoke to them when they arrived.

¶ 11    Santiago later identified Kaszuba to police in a lineup. The State introduced a photograph of the lineup as People's Exhibit No. 35, and Santiago initialed above the person he identified. The photograph was admitted into evidence.

¶ 12    On cross-examination, Santiago testified that he did not drink or smoke marijuana the night of the shooting. Santiago initially denied telling the police that the men who wore ski masks and the first person who got out of the Blazer wore a beige jacket, but later confirmed that he told the police that the man wore a beige jacket. Kaszuba was the only person in the lineup with a shaved head, blue jeans, or a white shirt. When asked if Kaszuba looked "fairly unique," Santiago responded, "It's like he was there." Santiago had not seen a photograph of Kaszuba before viewing the lineup.

¶ 13    Daniel Rodriguez testified that he drank and smoked marijuana with Santiago and saw two men get out of a black SUV. One wore a white jacket, and the other wore a black hoodie. They approached another man and searched him. The man in the white jacket then shot four times. Daniel ducked and heard two more shots. On cross-examination, Daniel testified that he told police officers the shooter wore a light beige, white, or pearl‑white jacket, and something covered his face.

¶ 14    Theophil David Encalado, Kaszuba's cousin, testified that the night of the shooting, he picked up Kaszuba and Kaszuba's friend, Mickey Pack, in his black Chevy Blazer and drove to a parking lot near Noble. Kaszuba wore a white coat, and Pack wore a black coat. Kaszuba told him that he saw a friend with whom he needed to talk and went over to speak with a man. Encalado denied seeing Kaszuba with a weapon or searching the other person. Pack left the car, and Encalado drove away. About two minutes later, Encalado heard gunshots and returned. Kaszuba and Pack reentered the Blazer, and Encalado dropped them off at a house down the street.

¶ 15    The State impeached Encalado with his grand jury testimony. At that time, Encalado testified that when Kaszuba got out of the Blazer to speak to his friend, he drew a weapon and

searched the friend's jacket, and when Kaszuba reentered, he held a bag of marijuana. Encalado also gave the police a handwritten statement providing that he saw Kaszuba grab the person's jacket with one hand and point a firearm at him with the other hand. On cross-examination, Encalado testified that he had never seen Kaszuba with a firearm.

¶ 16    Eric Arduini, Heidi Anderson, and Ben Vantil testified they lived in apartments near the shooting, heard gunshots, and looked out their windows. Each saw two people wearing coats, one light and one dark. Arduini testified the person in the lighter-colored coat held a firearm pointed downward, and he heard more gunshots as he called the police. In addition, Anderson testified the person in the darker-colored coat fired toward the ground, and Vantil could not say who had the weapon. Arduini and Vantil testified that they could not see their faces.

¶ 17    Angeleta Crespo, the mother of Kaszuba's child, testified that, after midnight on the night of the shooting, Kaszuba showed her a bag of marijuana and said someone had been killed for it. Police officers arrested Kaszuba at Crespo's home around 2 p.m. the next day. On cross-examination, Crespo testified that Kaszuba stated he was joking when he said someone had been killed for the marijuana.

¶ 18    The autopsy showed that Cocchia died of homicide from five gunshot wounds to his head and torso. The parties stipulated that four bullets were recovered from Cocchia's body, and a forensic firearms expert would testify the bullets were fired from the same firearm. The parties further stipulated that officers recovered a white jacket and a bag of suspect cannabis from the apartment where they arrested Kaszuba, and the bag's contents were positive for cannabis. An expert in trace evidence analysis and gunshot residue testing testified that he tested the jacket's sleeves and could not identify the three "unique" particles necessary for a positive gunshot residue

test but identified particles "consistent" with gunshot residue. He further testified that it is possible to discharge a firearm while wearing a jacket without the unique particles present on the jacket when tested.

¶ 19    Detective Raymond Schalk testified that after Kaszuba's arrest and transfer to the police station, Schalk advised Kaszuba of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Kaszuba agreed to speak and denied involvement in Cocchia's shooting.

¶ 20    Later that same day, Jeffrey identified Kaszuba in a lineup. Schalk re-Mirandized Kaszuba, who again denied involvement.

¶ 21    The next day, Schalk again Mirandized Kaszuba and showed him signed statements officers had obtained from Crespo and Encalado. Kaszuba explained he and Pack were in Pack's red Chevy Lumina the night of the shooting. At a gas station, Kaszuba saw Cocchia, whom Kaszuba knew, and Kaszuba and Pack decided to rob him. They called Encalado, who picked up Kaszuba and Pack in his black Chevy Blazer. They drove around until they saw Cocchia's car. As Cocchia walked toward it, Kaszuba and Pack got out of the Blazer, and Pack handed Kaszuba a firearm. They approached Cocchia, and Kaszuba pointed the firearm at Cocchia and asked what he had. Cocchia replied "some weed," and Kaszuba handed the firearm to Pack, took a bag of cannabis from Cocchia's pocket, and walked away. Pack then shot Cocchia about five times, and he and Kaszuba ran back to Encalado's Blazer. Kaszuba acknowledged wearing the white jacket, and the cannabis recovered was the same he took from Cocchia.

¶ 22    Santiago also identified Kaszuba as one of the shooters. Schalk then again met with Kaszuba and an assistant state's attorney. The ASA Mirandized Kaszuba, who repeated what he told Schalk about the shooting and gave a videotaped statement.

¶ 23    On cross-examination, Schalk testified that the original case report reflected that an officer interviewed Santiago and another witness, who stated that one of the offenders wore a beige coat, black hoodie, and ski mask and did not mention a white coat.

¶ 24    The ASA testified and identified Kaszuba's videotaped statement, which was published and admitted into evidence. The videotaped statement comports with Kaszuba's statement to Schalk. In the video, Kaszuba also corrects the ASA that Pack did not shoot Cocchia until Kaszuba walked away, they did not plan to shoot Cocchia, and he did not want to come off as a "killer." When Pack shot Cocchia, Kaszuba asked Pack what he was doing and yelled at him to stop. Kaszuba further noted that Pack bullied him when they were younger, and they used Encalado's car because Encalado was "legit," with a license and insurance.

¶ 25    The jury found Kaszuba guilty of first degree murder, with additional findings that he discharged a firearm proximately causing Cocchia's death. After a hearing, the court imposed the minimum 20 years' imprisonment plus a mandatory 25-year firearm enhancement.

¶ 26    On direct appeal, Kaszuba argued that the State failed to prove beyond a reasonable doubt that he discharged a firearm proximately causing Cocchia's death, and therefore, the 25-year sentencing enhancement was erroneously applied. We affirmed. *People v. Kaszuba*, 375 Ill. App. 3d 262 (2007).

¶ 27    On June 2, 2008, Kaszuba filed a *pro se* petition for relief. Kaszuba argued, in relevant part, that trial counsel was ineffective for failing to obtain a toxicology report supporting intoxication from cocaine at the time of his inculpatory statement. Kaszuba also argued that appellate counsel should have raised trial counsel's ineffectiveness for failing to challenge the out-of-court identifications of Kaszuba as the shooter, as the lineups were impermissibly suggestive

and led to the in-court identifications. Specifically, Kaszuba asserted that People's Exhibit No. 35, the photograph of the lineup Santiago viewed, showed he "stuck out in the lineup as the person the police wanted picked out." No one else had a shaved head, blue jeans, and white shirt, and Santiago admitted that Kaszuba "stood out" in the lineup.

¶ 28    On July 11, 2008, the circuit court summarily dismissed Kaszuba's petition. Kaszuba appealed, arguing that his petition sufficiently alleged his trial counsel's ineffectiveness for failing to obtain the toxicology report and challenge the suggestiveness of the lineup identification. In a March 9, 2010 order, this court held the petition sufficient enough to advance to second-stage proceedings regarding the toxicology report. Without considering his remaining claims, we reversed and remanded for second stage proceedings. *People v. Kaszuba*, No. 1-08-2260 (2010) (unpublished order under Illinois Supreme Court Rule 23). The record includes an impound order for the trial exhibits, reflecting that more than 75 photographs were to be impounded.

¶ 29    The case was docketed on remand on May 13, 2010. Multiple attorneys represented Kaszuba and he briefly appeared *pro se* until Margaret Lundahl filed an appearance in March 2014. On May 6, 2014, Lundahl noted that Kaszuba provided some materials but not the common law record. The State suggested that she obtain the record from the clerk's office, as "then she [would] have everything related to it."

¶ 30    On May 12, 2015, Lundahl explained that she had not yet prepared an amended petition because she lacked Kaszuba's original petition, the record from his appeal of the dismissal of his petition, affidavits, and "exhibits." On the next date, Lundahl stated that she had "the original affidavit and things that I did not have three months ago." The record includes another impound

order for the trial exhibits. The order reflects that People's Exhibits Nos. 23-95, all photographs, were to be impounded.

¶ 31     On May 30, 2017, Lundahl filed an amended petition, and appended an affidavit averring that the lineup photograph was "not in any of the items" in her possession. In court that day, the State noted it would draft an order "for the clerk's office to get the record," and Lundahl stated, "I did return it today." On August 2, 2017, Lundahl filed a second amended petition.

¶ 32     Both amended petitions argued that appellate counsel was ineffective for failing to challenge trial counsel's effectiveness for not moving to suppress Santiago's and Jeffrey's out-of-court identifications of Kaszuba as the shooter. The petitions repeated that Santiago admitted that Kaszuba "stood out" in the lineup. The petitions further repeated that People's Exhibit No. 35, the photograph of the lineup Santiago viewed, "shows that the defendant stuck out in the lineup" and was the only person of the five men depicted, with a shaved head, white shirt, and blue jeans. Moreover, Daniel was in the same car as Santiago but could not see the shooter's face, and Jeffrey saw the shooting from his apartment, while other witnesses who viewed the shooting from similar vantage points could not see the shooter's face.

¶ 33     The second amended petition also asserted that (i) trial counsel was ineffective for failing to seek a fitness hearing or investigate an insanity defense after being informed that Kaszuba was prescribed psychotropic medication; (ii) trial counsel was ineffective for failing to corroborate Kaszuba's testimony that his statement was involuntary due to his intoxication with medical records or the testimony of witnesses who contemporaneously observed him; (iii) Kaszuba involuntarily and unknowingly agreed to the stipulations at trial; (iv) Kaszuba's right to testify was violated; (v) Santiago perjured himself at trial, and appellate counsel was ineffective for failing to

raise the issue; and (vi) the 25-year firearm enhancement to Kaszuba's sentence was an improper double enhancement. Lundahl appended numerous documents to support the petition, including Kaszuba's affidavit averring that he demanded counsel during his interrogation.

¶ 34 Lundahl also submitted a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). It said she consulted with Kaszuba by phone and mail to ascertain his claims, examined "the court docket, the discovery and pleadings provided by the state and the report of the proceedings for his trial and sentencing," and provided the necessary claims and materials to present Kaszuba's contentions. In another affidavit, Lundahl said, "In putting together the final petition I discovered that the lineup photo is not in any of the items I have in my possession."

¶ 35 On January 16, 2018, the State filed a motion to dismiss, arguing that Kaszuba failed to make a substantial showing of his claims. Lundahl filed a memorandum in opposition but withdrew the sentencing claim.

¶ 36 On April 30, 2018, the court heard argument on the State's motion to dismiss. The State first argued that Kaszuba provided insufficient documentation that there was a *bona fide* doubt of his fitness at the time of trial, then asserted that he did not establish his counsels were ineffective regarding the lineup identifications. Lundahl responded to the State's contentions, arguing that the available materials showed a *bona fide* doubt of Kaszuba's fitness, noting her difficulties obtaining more medical records and then discussing the lineup identifications. Lundahl stated:

> "And then so in terms of the time of the trial and what was available [regarding Kaszuba's fitness], I have tried to find evidence of that. I subpoenaed records, and I don't think I was looking in the right place because I can't find anything that says that. So that's why it's still not available since that. Then in terms of the motion to suppress identification,

we did explain why the lineup was suggestive. He was the only person who was bald and had—I do not have a copy of Exhibit 35 to give to you. I couldn't find it."

¶ 37    The court granted the State's motion to dismiss, finding that Kaszuba failed to show that a motion to suppress identification would have succeeded, and, thus, failed to show that trial and appellate counsels were ineffective regarding trial counsel's failure to file the motion.

¶ 38                                                    Analysis

¶ 39    Kaszuba appeals, asserting first that Lundahl provided unreasonable assistance by failing to review People's Exhibit No. 35, the photograph of the lineup Santiago viewed. Kaszuba argues (i) the photograph was relevant to the claim in his *pro se* petition, which Lundahl also asserted in the amended petitions, and (ii) appellate counsel should have challenged trial counsel's effectiveness for not seeking to suppress the lineup identifications. Kaszuba notes that the photograph was impounded with the other trial exhibits, all of which the circuit court clerk transmitted to this court. The State contends that Lundahl presumptively and substantially complied with the requirement of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) that she review the record, where she submitted a certificate of compliance and explained that she could not locate the photograph. The State further argues that the photograph would not have advanced Kaszuba's claim.

¶ 40    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)) provides a statutory remedy for criminal defendants who claim that they suffered substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides for three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss petitions which are frivolous or patently without merit. *Id.*; see also 725

ILCS 5/122-2.1(a)(2) (West 2008). At the second stage, counsel may be appointed if the defendant is indigent and may amend the petition, and the State may move to dismiss the petition. *People v. Cotto*, 2016 IL 119006, ¶ 27 (citing 725 ILCS 5/122-4, 122-5 (West 2008)). The court then determines whether the petition and accompanying documentation make a substantial showing of a constitutional violation. *Id.* ¶ 28.

¶ 41    There is no constitutional right to the assistance of counsel during post-conviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. As a matter of legislative grace, however, the Act provides a right to a "reasonable level" of assistance. *Id.* A "reasonable level *** is significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *Id.*

¶ 42    To guarantee a reasonable level of assistance, post-conviction counsel must (i) consult with the defendant to ascertain his contentions; (ii) examine the record of the trial proceedings; and (iii) make amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. *Id.*; see also Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The "record of proceedings at trial" comprises (i) the common law record, (ii) the report of proceedings, and (iii) the trial exhibits. See *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 18; see also Ill. S. Ct. R. 324 (eff. July 1, 2017) (record on appeal shall be arranged as common law record, report of proceedings, and trial exhibits); Ill. S. Ct. R. 612(b)(4) (eff. July 1, 2017) (making Rule 324 applicable to criminal appeals). Rule 651(c) "requires post-conviction counsel to examine as much of the record as is necessary to adequately present and support those constitutional claims raised by the petitioner." (Internal quotation marks omitted.) *People v. Collins*, 2021 IL App (1st) 170597, ¶ 34. Substantial compliance with the rule is sufficient. *Id.* ¶ 30.

¶ 43    When post-conviction counsel files a certificate attesting that they have performed the duties required by Rule 651(c), the certificate creates a rebuttable presumption counsel provided the reasonable level of assistance the Act guarantees. *Id.* ¶ 31. The defendant then bears the burden of overcoming that presumption by demonstrating counsel failed to substantially comply with the rule. *Id.* We review *de novo* whether counsel substantially complied with Rule 651(c). *Id.*

¶ 44    Here, Kaszuba argued in his *pro se* petition that appellate counsel was ineffective for not arguing that trial counsel was ineffective for failing to file a motion to suppress the identifications of him as Cocchia's shooter. Kaszuba alleged that the lineup was highly suggestive and led to his in-court identification, Santiago admitted that Kaszuba "stood out" in the lineup, People's Exhibit No. 35 "shows that [he] stuck out in the lineup as the person the police wanted picked out," and he was the only one with a shaved head, white shirt, and blue jeans. Lundahl repeated those allegations in the amended petitions. The State does not dispute that the relevance of the exhibit to Kaszuba's claim. Indeed, Rule 651(c) mandated Lundahl examine, or attempt to examine, People's Exhibit No. 35. See *id.* ¶ 34 (post-conviction counsel must examine as much of record as necessary to adequately present and support petitioner's claims); see also *People v. Johnson*, 154 Ill. 2d 227, 245 (1993) ("At a minimum, counsel had an obligation to attempt to obtain evidentiary support for claims raised in the post-conviction petition.").

¶ 45    Lundahl's certificate provided that she examined "the court docket, the discovery, and pleadings provided by the state and the report of the proceedings for [Kaszuba's] trial and sentencing." The certificate does not provide that Lundahl examined the trial exhibits. Instead, Lundahl's affidavit stated, "In putting together the final petition I discovered that the lineup photo is not in any of the items I have in my possession." Then, when arguing the State's motion to

dismiss, Lundahl admitted to the court that she did not possess a copy of the photograph because she "couldn't find it." Notably, though, People's Exhibit No. 35 is included with the remainder of the trial exhibits transmitted to this court by the circuit court clerk.

¶ 46 We find *Blanchard* instructive. There, following an armed robbery conviction, the defendant's *pro se* post-conviction alleged, among other claims, that he was identified in a suggestive lineup, and the State introduced false evidence regarding a credit card the defendant allegedly took from the victim. *Blanchard*, 2015 IL App (1st) 132281, ¶ 7. The petition included a photocopy of a lineup photograph. *Id.* Post-conviction counsel declined to amend the petition, explained to the defendant that the credit card had been returned to the victim, and filed a Rule 651(c) certificate. *Id.* ¶ 8 According to the certificate, counsel had examined the transcripts, common law record, appellate briefs, the order on direct appeal, and the defendant's petition. *Id.* About one month later, counsel filed a supplemental post-conviction petition and another Rule 651(c) certificate, indicating counsel examined the transcripts, common law record, appellate briefs, order from direct appeal, and defendant's petition, and investigated his claims. *Id.* ¶ 9. Defendant then filed a *pro se* motion for leave to amend his post-conviction petition, raising issues with the chain of custody of the credit card, which defendant noted was submitted as an exhibit at trial. *Id.* ¶ 10.

¶ 47 On appeal from the petition's dismissal, we found that counsel's Rule 651(c) certificates did not reflect whether counsel examined the trial exhibits, which included the lineup photograph and the credit card. *Id.* ¶ 18. We did not presume counsel failed to review or consider the exhibits because she failed to mention them in her certificates. *Id.* Rather, we remanded for compliance with Rule 651(c) and the subsequent reconsideration of the petition, explaining:

"[W]e are unable to determine from counsel's certificates if she examined Blanchard's trial exhibits. This is especially so because our *de novo* review shows that the lineup exhibit and the victim's credit card are in fact present in the record on appeal. Thus, while nothing in Rule 651(c) suggests that the certificate is intended to be a comprehensive recounting of all of an attorney's post-conviction efforts [citation], where, as here, the post-conviction petition identifies specific exhibits as a basis for the petition, good practice and completeness calls for the Rule 651 (c) certification to address the exhibits in order for the presumption of compliance to be invoked and for a proper review of defendant's claims by this court." *Id.*

¶ 48    Similarly, in *People v. Jackson*, 2021 IL App (1st) 190263, the defendant's *pro se* post-conviction petition alleged that trial counsel was ineffective for failing to introduce the clothes he wore on the night of his armed habitual criminal offense. He alleged his clothes were so baggy that no one could have seen a firearm bulge in his pocket. *Jackson*, 2021 IL App (1st) 190263, ¶¶ 3-4, 21. Post-conviction counsel's Rule 651(c) certificate indicated that counsel examined the common law record, report of proceedings, exhibits, trial court file, and trial counsel's file and spoken with both trial attorneys. *Id.* ¶ 22. On appeal from second-stage dismissal, we found that the record did not reflect what efforts, "one way or the other," post-conviction counsel took to obtain evidence of his clothing. *Id.* ¶ 44. Again, we could not find that counsel was unreasonable and remanded for counsel to develop the record concerning compliance with Rule 651(c) regarding the evidence. *Id.* ¶ 46. We noted that remand was required regardless of whether the underlying claim had merit. *Id.* ¶ 47.

¶ 49    The record regarding whether Lundahl examined People's Exhibit No. 35 goes further than *Jackson* and *Blanchard*. Lundahl's statements in her affidavits and court demonstrate she did not possess and could not find the exhibit. Nonetheless, the State argues that Lundahl substantially complied with Rule 651(c) by trying and failing to obtain the exhibit. Specifically, the State quotes part of Lundahl's argument to the trial court, where she explained that she "subpoenaed records" but could not find People's Exhibit No. 35. The record establishes that the portion of the quote in which Lundahl discusses issuing a subpoena for records referred to her search for records potentially showing trial counsel's ineffectiveness for failing to seek a fitness hearing. She then transitioned to discussing the lineup identification.

¶ 50    Moreover, the record reflects that Lundahl had access to the exhibit. The exhibits were impounded in March 2010 following remand of Kaszuba's petition. On May 6, 2014, the State suggested that Lundahl obtain the record from the clerk's office, as "then she [would] have everything related to it." On May 12, 2015, Lundahl explained that she did not have the exhibits, but on August 18, 2015, she stated that she had obtained "things that I did not have three months ago."

¶ 51    Another impound order shows the circuit court clerk impounded the exhibits again in January 2017. On May 30, 2017, when Lundahl filed the first amended petition, the State noted it would draft an order for the clerk's office to obtain the record. Lundahl stated, "I did return it today." Lundahl filed the second amended petition and her certificate of compliance in August 2017. As noted, the exhibit is included in the trial exhibits the circuit court clerk transmitted to this court. Thus, the record demonstrates that Lundahl either possessed the exhibit and returned it to the clerk's office or could have obtained it from the clerk's office, at least after January 2017, four

months before she filed the first amended petition and seven months before she filed the second amended petition and certificate of compliance.

¶ 52    Consequently, we decline to presume that Lundahl provided reasonable assistance based on her certificate of compliance. See *Blanchard*, 2015 IL App (1st) 132291, ¶ 18 ("where, as here, the post-conviction petition identifies specific exhibits as a basis for the petition, good practice and completeness calls for the Rule 651 (c) certification to address the exhibits in order for the presumption of compliance to be invoked"). Moreover, even if the certificate created a presumption of reasonableness, Kaszuba had rebutted it with affirmative evidence, in the form of Lundahl's own statements, that she did not examine the exhibit, despite the record demonstrating that it was available from the clerk's office for four months before she filed the first amended petition, and seven months before she filed the second amended petition and certificate of compliance. Accordingly, we hold that Lundahl provided unreasonable assistance by not examining the exhibit.

¶ 53    The State argues that the photograph would not advance Kaszuba's claim and that Jeffrey also identified Kaszuba in a lineup, a photograph of which was admitted into evidence but which is not at issue in this appeal. Kaszuba responds that noncompliance with Rule 651(c) requires remand without analyzing whether his claim has merit or whether the photograph would have advanced it. See *People v. Suarez*, 224 Ill. 2d 37, 47, 52 (2007) (remand required by lack of compliance with Rule 651(c), which is not subject to harmless-error analysis). In contrast, the State relies on *People v. Wallace*, 2016 IL App (1st) 142758, where we held that "[w]ithout any indication of whether [certain] documents would have actually benefitted defendant's claim ***,

we will not assume that counsel was unreasonable in not attaching them to his petition." *Wallace*, 2016 IL App (1st) 142758, ¶ 27.

¶ 54    *Wallace* is distinguishable. There, the defendant's *pro se* post-conviction petition alleged that he was unfit to plead guilty, and his trial counsel was ineffective for failing to investigate his mental health and drug abuse. *Id.* ¶ 4. Defendant attached affidavits from other people describing his mental health history. *Id.* Post-conviction counsel filed a certificate asserting examination of the report of proceedings and documents relevant to the plea and sentencing, defendant's petition, and attached documents. *Id.* ¶ 5. Counsel further stated that documents in defendant's file had been reviewed and attached those relevant to the certificate. *Id.* Among the documents were orders directing the release of defendant's medical records, subpoenas to the hospital and correctional center, and a transcript reflecting that defendant missed a court date for hospitalization. *Id.* Counsel did not amend the defendant's petition, concluding it adequately presented his claims. *Id.* The defendant then attempted to file a *pro se* amendment alleging trial counsel's ineffectiveness for failing to request a fitness hearing, and post-conviction counsel, though aware of the amendment, having declined to adopt it. *Id.* ¶ 6. The court granted the State's motion to dismiss the defendant's petition. *Id.* ¶¶ 7-8.

¶ 55    On appeal, the defendant argued that post-conviction counsel failed to provide reasonable assistance by failing to examine or attach relevant mental health records to his petition. *Id.* ¶ 27. But, we presumed that counsel acted reasonably where the certificate indicated that counsel examined the record of the proceedings, defendant's file, his petition, and its attached documents, and concluded amendment was unnecessary. *Id.* ¶ 26. Moreover, the assertions were uncontradicted by the record. *Id.* Further, defendant noted no evidence in the record that post-

conviction counsel did not seek out and examine all available evidence, and we did not know the substance of the records or whether they supported defendant's claim that he was unfit to plead guilty. *Id.* ¶ 27. We, therefore, declined to assume that counsel was unreasonable in not attaching the records to the defendant's petition. *Id.* We found that the defendant did not overcome the presumption of reasonableness. *Id.* We further distinguished the case from *People v. Waldrop*, 353 Ill. App. 3d 244, 250 (2004), where the record contradicted the presumption that post-conviction counsel acted reasonably by not seeking an affidavit from a witness identified in defendant's *pro se* petition. *Wallace*, 2016 IL App (1st) 142758, ¶ 29.

¶ 56    Unlike in *Wallace*, we cannot presume that Lundahl made a concerted effort to obtain the exhibit when it was available from the clerk's office while she prepared the amended petitions. Instead, as in *Waldrop*, the record contradicts the presumption Lundahl acted reasonably by not examining People's Exhibit No. 35—which Kaszuba specifically identified in his *pro se* petition as support for his claim, a contention repeated in the amended petitions—where the record establishes that Lundahl could have examined the exhibit. Thus, Kaszuba has demonstrated that Lundahl failed to substantially comply with Rule 651(c).

¶ 57    To resolve the appeal, we need not analyze whether People's Exhibit No. 35 would help advance Kaszuba's claim. *Suarez*, 224 Ill. 2d at 47, 52 (lack of compliance with Rule 651(c) not subject to harmless-error analysis); see also *People v. Davis*, 382 Ill. App. 3d 701, 713 (2008) ("defendant need not demonstrate prejudice in order to succeed on a claim that post-conviction counsel violated Rule 651(c)" (citing *People v. Lander*, 215 Ill. 2d 577, 585 (2005))).

¶ 58    Accordingly, we vacate the judgment of the circuit court of Cook County dismissing Kaszuba's amended petition and remand for further post-conviction proceedings, where Kaszuba is entitled to reasonable assistance of counsel. *Suarez*, 224 Ill. 2d at 47.

¶ 59    Given our conclusion that Lundahl failed to comply with Rule 651(c)'s requirement to review the record adequately, we need not discuss Kaszuba's additional claim that Lundahl failed to comply with the rule's requirements by not presenting a *Miranda* claim or proportionate penalties claim in the second amended petition. See *Lander*, 215 Ill. 2d at 585 (where counsel failed to comply with rule's consultation requirement, reviewing court "need not discuss whether counsel fulfilled the other duties under Rule 651(c)"); see also *People v. Jones*, 2016 IL App (3d) 140094, ¶ 34 (declining to reach alternative Rule 651(c) argument given finding that post-conviction counsel failed to satisfy rule's requirements in presenting one of defendant's claims).

¶ 60    Vacated and remanded.