2022 IL App (1st) 201410-U

THIRD DIVISION
December 21, 2022

No. 1-20-1410

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 CR 14421 |
| WILLIE MENZIE, | ) ) | |
| Defendant-Appellant. | ) ) ) ) ) | Honorable Michele McDowell Pitman, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Affirming the denial of defendant's motion for leave to file a second successive post-conviction petition where defendant failed to satisfy the cause-and-prejudice test.

¶ 2     Defendant, Willie Menzie, appeals the circuit court of Cook County's denial of his motion for leave to file a second successive post-conviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, defendant argues that he satisfied the cause-and-prejudice test. For the following reasons, we affirm.

¶ 3                                         BACKGROUND

¶ 4      The evidence at trial established that on May 20, 2004, the victim, Willie Slater, had been

stabbed to death. Defendant was charged by indictment with two counts of first-degree murder,

and the State proceeded to trial on both counts. Following a jury trial, defendant was convicted

of first-degree murder and sentenced to 23 years' imprisonment. Defendant filed a direct appeal,

and we affirmed. *People v. Menzie*, No. 1-07-3412 (2009) (unpublished order under Supreme

Court Rule 23).

¶ 5      Defendant filed an initial *pro se* post-conviction petition, which was docketed and

advanced to the second stage under the Act. The trial court subsequently appointed defendant

post-conviction counsel. In response to the petition, the State filed a motion to dismiss. While the

motion was pending, defendant filed first amended, second amended, and third amended *pro se*

post-conviction petitions.[1] The trial court held a hearing on the State's motion to dismiss. At the

hearing, the trial court dismissed defendant's third amended *pro se* post-conviction petition since

defendant filed it after obtaining counsel. In addition, the trial court dismissed defendant's initial

*pro se* post-conviction petition. Neither the parties nor the trial court explicitly addressed a first

amended or second amended *pro se* post-conviction petition. On the same day as the hearing,

defendant filed a notice of appeal.

¶ 6      Defendant then filed a motion for leave to file a successive petition, which the trial court

denied. Following the denial of leave, defendant filed a notice of appeal. This court consolidated

defendant's appeal of the dismissal of his initial *pro se* post-conviction petition and appeal of the

denial of leave to file a successive post-conviction petition, and we affirmed. *People v. Menzie*,

2014 IL App (1st) 121817-U, ¶ 79.

---

[1] No second amended *pro se* post-conviction petition is included in the record on appeal.

¶ 7    Defendant then filed a motion for leave to file a second successive post-conviction petition, which the trial court denied. Defendant subsequently filed the instant appeal. The following facts are limited to only those necessary to resolve the instant appeal.

¶ 8                                Trial

¶ 9    At trial, Marlene Mayfield (Marlene) testified that she was visiting defendant at his residence on May 19, 2004. Around midnight, she was sitting on the front porch with defendant and his nephew, Aaron Menzie. Marlene testified that she thought defendant seemed upset, and he informed her that he was "mad" and could "hurt somebody." Later, Marlene observed Willie Slater (Slater), an individual she knew as "Neal" or "Slay Rock," walking down the street toward defendant's house. As Slater approached the porch where defendant, Marlene, and Aaron were sitting, defendant walked down the porch steps toward Slater and stabbed him once. Slater crossed the street and ran toward the liquor store on the corner. Defendant then went inside his house. Marlene went into the house and used the house phone to call the police. Once officers arrived, Marlene showed them where the family kept their knives in the kitchen, and the police found a blood-tipped knife in one of the kitchen drawers.

¶ 10    Aaron Menzie (Aaron), defendant's nephew, testified that on the day of the stabbing, he was living at his grandmother's house with his mother, three siblings, and defendant. Aaron recalled that when he arrived at home that evening around 11 p.m., defendant was approaching the house. Aaron checked on everyone inside and joined Marlene and defendant on the porch. Aaron testified that he observed defendant holding a knife and was concerned because the police had been patrolling the street. Aaron warned defendant to put the knife away, but he did not respond. Aaron then noticed Slater, whom he knew from the neighborhood as "Slay Rock," walking toward them. As Slater walked toward the house's gate, defendant walked down the

porch steps, walked past the gate, and stabbed Slater. Aaron did not hear Slater say anything to defendant prior to the stabbing. Defendant then walked back into the house. Aaron followed Slater down the street and to the liquor store while calling 911 on his cell phone. When the police arrived at the house, Aaron helped the police find defendant, pointing to the back of the house. The police found defendant hiding in Aaron's bedroom.

¶ 11 The State rested. Defendant moved for a directed verdict, and the trial court denied the motion. The defense then presented its case-in-chief.

¶ 12 Defendant testified on his own behalf. Defendant stated that he knew Slater as "Neal" and knew him for a couple of months before Slater was stabbed. Defendant asserted that they were not friends. Defendant testified that Slater had been selling drugs in front of his house that day and that defendant asked him to leave since defendant's mother did not want him there. Defendant asserted that Slater was upset but left. Defendant testified that he observed Slater selling drugs in front of the liquor store, a place where members of the Vice Lords gang sold drugs. Defendant testified that Slater was a gang member.

¶ 13 Defendant testified that later in the afternoon, defendant smoked crack with Slater at the side of defendant's house. Defendant next observed Slater as he was leaving the liquor store at dusk. Slater and his companion stopped defendant and asked for change and beer. Defendant declined, and Slater became upset and threatened him. Defendant testified that he walked away. Defendant next testified that he returned home, sat on the porch and had some beer. An hour or two later, defendant walked back to the liquor store, and after purchasing beer, defendant went to the side of the store. Defendant then observed Slater walk back to the liquor store and was looking around a dumpster. Slater approached defendant and asked him whether he knew where his "pack" was; defendant understood "pack" to mean crack cocaine. Defendant testified he told

Slater that he knew nothing about the pack. Defendant testified that Slater did not believe defendant, hit defendant, and threatened defendant that if Slater did not find the pack, then "something is going to happen to you."

¶ 14   Defendant testified that he returned home and sat on his porch. Marlene and Aaron joined him, and defendant informed them that he was about to be jumped. Five minutes later, defendant observed Slater quickly walking down the street. Defendant testified that he became nervous and thought Slater would hurt or kill him. Defendant then left the porch, approached Slater, and asked him why he was "messing" with defendant. Slater replied "F*** you," "started threatening [him]," and said "something is going to happen to you." Defendant demonstrated for the jury how Slater raised his hands. Defendant admitted that he then reached into his pocket, took out the knife, and stabbed Slater, who ran across the street toward the liquor store. Defendant went inside the house and told his mother what happened. Defendant admitted he placed the bloody knife in a kitchen drawer and threw his bloody shirt in the garbage. Defendant testified that he hid from the police in Aaron's bedroom.

¶ 15   Defendant was arrested at his home. After being advised of his *Miranda* rights, defendant consented to a videotaped interview during which he admitted that he stabbed Slater. At trial, defendant's videotaped statement was published to the jury and a transcript of the statement was admitted into evidence.

¶ 16   Following the close of evidence, the trial court instructed the jury. The jury instructions included a second-degree murder instruction, which stated that to find defendant guilty of this lesser offense, the jury must find that the following mitigating circumstance was present: at the time of the killing, defendant believed that circumstances existed which justified the use of deadly force but that such a belief was unreasonable.

¶ 17    The jurors retired to deliberate. During deliberations, the jurors sent out four notes. First, the jurors sent out a note asking the trial court why it had not read aloud all the instructions that the jurors had received. The trial court then discovered that the jurors received an instruction regarding intoxication which the trial court did not intend to give. Defendant then moved for a mistrial, arguing that the jurors were biased. The State responded that the jurors were not biased and that declaring a mistrial was not necessary. The trial court ruled that it would reinstruct the jurors with the proper instructions and ask them whether they could disregard the previous instructions. If the jurors indicated that they could disregard the previous instructions, then the trial court would instruct them to restart their deliberations. The trial court brought the jurors back into the courtroom and reinstructed them. Subsequently, the trial court asked the jurors whether they could restart their deliberations with the new instructions and disregard the previous instructions, and each juror said "[y]es." The trial court then instructed defendants to restart their deliberations.

¶ 18    Thereafter, the jury sent out second and third notes. The second note asked whether the trial court would clarify the mitigating circumstances of second-degree murder. The third note requested a copy of defendant's testimony and informed the court that "[w]e are kind of stuck." The court informed the jury that they had all the information they needed. Two hours later, the jury sent out a fourth note stating that they had "hit an absolute brick wall. We are eleven to one and cannot come to a conclusion." The court instructed the jury to continue deliberating. An hour later, the jury reached a verdict, finding defendant guilty of first-degree murder.

¶ 19    Defendant filed a motion for a new trial in which he argued that the prosecution failed to disclose that Aaron had a pending misdemeanor theft charge at the time he testified. Four days prior to defendant's trial, Aaron was arrested for misdemeanor theft. At the hearing on the

motion, defense counsel argued that he became aware of Aaron's theft charge only after Aaron testified and that, had defense counsel known about the charge, he would have proceeded differently at trial. The trial court denied the motion.

¶ 20     The matter proceeded to sentencing, and the trial court sentenced defendant to 23 years in the Illinois Department of Corrections. Defendant filed a direct appeal.

¶ 21                                    Direct Appeal

¶ 22     On direct appeal, defendant argued that he was denied a fair trial when the State failed to inform the jury that Aaron had a misdemeanor theft charge pending during trial, or alternatively, that trial counsel was ineffective by failing to cross-examine Aaron as to his pending theft charge. In addition, defendant argued that he was denied due process when the prosecutor during closing arguments misstated the law as to what constitutes an unreasonable belief in self-defense. We affirmed defendant's conviction. *People v. Menzie*, No. 1-07-3412 (2009) (unpublished order under Supreme Court Rule 23).

¶ 23                              Post-Conviction Petition

¶ 24     In June 2010, defendant filed a post-conviction petition for relief under the Act. In the petition, defendant asserted that his constitutional rights were violated when (1) the trial court declined to clarify the second-degree murder instruction to the jury, (2) his trial counsel was ineffective by failing to object to the trial court's decision not to clarify the second-degree murder instruction, (3) appellate counsel was ineffective when he failed to raise issues that defendant requested appellate counsel raise on direct appeal,[2] (4) the trial court failed to provide the jury a copy of defendant's trial testimony, and (5) his trial counsel was ineffective by failing

---

[2] This claim failed to specify which issues appellate counsel failed to raise on direct appeal.

to present two witnesses on defendant's behalf. The trial court ordered that defendant's post-conviction petition be docketed, advancing the petition to the second stage of the Act.

¶ 25    Thereafter, defendant forwarded a *pro se* "amended post-conviction petition" to the trial court.[3] Defendant asserted in the amended petition that his constitutional rights were violated since (1) the trial court denied the jury's request to clarify the second-degree murder instruction, (2) the trial court denied defendant's motion for a mistrial, (3) the prosecutor misstated the law as to second-degree murder during closing arguments, (4) he was not found guilty beyond a reasonable doubt, (5) the State failed to disclose that Aaron had a pending theft charge during defendant's trial, (6) the trial court denied defendant the opportunity to impeach Slater's credibility with a certified conviction, (7) trial counsel was ineffective by failing to object to the State's witnesses being present in the courtroom during testimony, (8) the trial court denied his motion for a directed verdict, and (9) during opening statements the State improperly commented on defendant's credibility.[4]

¶ 26    In October 2011, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). The certificate stated that "I have consulted with the petitioner, Willie Menzie *** to ascertain his contentions of deprivations of constitutional rights" and that "I have not prepared an Amended Petition for Post-Conviction Relief as the petitioner's previously filed *pro se* and amended *pro se* petitions for post-conviction relief adequately set[]

---

[3] The record does not indicate whether defendant mailed this amended petition to the clerk of the circuit court, the assistant state's attorney, or postconviction counsel. The record on appeal does not include a certificate of service for the amended petition. The amended petition is included in the supplemental record on appeal but is not file stamped.

[4] The copy of the amended *pro se* postconviction petition does not contain a signature page or an affidavit from defendant. The only document attached to the amended petition is a transcript of the parties' arguments as to whether a certified conviction should have been admitted into evidence.

forth the petitioner's claims of deprivation of his constitutional rights."

¶ 27    The State then filed a motion to dismiss defendant's petition for post-conviction relief. In its motion, the State argued that (1) defendant's ineffective assistance of trial counsel claims were without merit, (2) defendant's ineffective assistance of appellate counsel claim should fail where the underlying issues were without merit, and (3) defendant forfeited his claims that the trial court erred since he failed to raise them on direct appeal.

¶ 28    On April 30, 2012, defendant filed a motion for leave to file a third amended *pro se* post-conviction petition and a copy of the third amended petition. In his third amended petition, defendant argued that his constitutional rights were violated when the prosecutor misstated the law as to second-degree murder and when the trial court denied the jury's request to clarify the second-degree murder instruction.

¶ 29    On June 15, 2012, the trial court held a hearing on the State's motion to dismiss defendant's initial post-conviction petition. Earlier that day, the State had filed an additional motion, a "Motion To Dismiss Pro-Se Pleading Filed After Representation of Counsel," and at the hearing, the State clarified that its "Motion To Dismiss Pro-Se Pleading Filed After Representation of Counsel" was directed towards defendant's third amended petition. Post-conviction counsel stated that she had received the third amended petition but declined to adopt it, stating that defendant "is basically saying the same thing that he did in his original post-conviction petition, just rewording it slightly, differently than the original petition, which I have reviewed." The trial court granted the State's "Motion To Dismiss Pro-Se Pleading Filed After Representation of Counsel." In so ruling, the trial court stated that "[s]o the record is clear, defendant's third amended post-conviction petition filed April 30th, 2012, is dismissed."

¶ 30    The trial court proceeded to the State's motion to dismiss defendant's initial post-

conviction petition. In granting the State's motion, the trial court found that defendant failed to demonstrate how his trial and appellate counsel provided deficient representation or how that representation prejudiced defendant. Further, the trial court found that defendant forfeited his claims arising from the jury's notes since these claims could have been raised on direct appeal. Neither the parties nor the trial court explicitly addressed a first amended or second amended *pro se* post-conviction petition. The trial court dismissed defendant's initial *pro se* post-conviction petition. On the same day, defendant filed a notice of appeal.

¶ 31                    Defendant's First Successive Post-Conviction Petition

¶ 32    In October 2012, defendant filed a *pro se* motion for leave to file a successive petition for post-conviction relief and a copy of his successive petition. In his successive post-conviction petition, defendant claimed that his trial counsel committed the following errors: that counsel failed to (1) "object to inaccurate instruction during [defendant's] trial"; (2) object when the trial court refused to provide the jury with a transcript of defendant's testimony, (3) present Aaron's pending theft charge to impeach his credibility, (4) object when the trial court responded to the jury's notes outside of defendant's presence, (5) present two witnesses on defendant's behalf, and (6) "object to inaccurate instruction during [defendant's] trial." Immediately following defendant's ineffective assistance of trial counsel claims, defendant claimed that appellate counsel was ineffective by failing "to raise the above claims."

¶ 33    Defendant further claimed that the trial court committed the following errors: the trial court (1) declined to clarify the mitigating circumstances of second-degree murder, (2) refused to provide the jury with a transcript of defendant's testimony, (3) denied defendant's motion for a mistrial, (4) overruled trial counsel's objections when the State misstated the law as to second-degree murder, and (5) improperly responded to the jury's notes outside of defendant's presence.

¶ 34    Finally, defendant claimed that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt, (2) the State committed a *Brady* violation when it failed to disclose that Aaron had a pending theft charge and his appellate counsel was ineffective for failing to raise this argument on direct appeal, and (3) defendant should have been permitted to impeach Slater's credibility with a certified conviction.

¶ 35    In February 2013, the trial court denied defendant's motion for leave to file a successive post-conviction petition since he failed to satisfy the cause-and-prejudice test. Defendant appealed the trial court's denial of leave.

¶ 36                           Consolidated Appeals

¶ 37    On appeal, this court consolidated defendant's appeal of the dismissal of his initial *pro se* post-conviction petition and the appeal of the denial of leave to file a successive post-conviction petition, and we affirmed. *People v. Menzie*, 2014 IL App (1st) 121817-U, ¶ 79.

¶ 38                 Defendant's Second Successive Post-Conviction Petition

¶ 39    In May 2020, defendant filed a motion for leave to file a second successive post-conviction petition and a copy of the petition. In the second successive petition, defendant raised several claims, including that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. The trial court denied the motion for leave, finding that defendant failed to satisfy the cause-and-prejudice test since the claims that defendant's second successive petition raised had already been addressed and resolved in prior post-conviction proceedings.

¶ 40    This timely appeal follows.

¶ 41                              ANALYSIS

¶ 42    On appeal, defendant argues that he demonstrated cause and prejudice and that he

properly raised the claim in his second successive petition that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. For the following reasons, we affirm.

¶ 43                                    The Act

¶ 44     The Act provides a method for defendants to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2020). "A proceeding under the Act is a collateral attack on the judgment of conviction." (Internal quotation marks omitted.) *People v. Smith*, 2014 IL 115946, ¶ 22.

¶ 45     The Act contains a three-stage procedure for relief. *People v. Allen*, 2015 IL 113135, ¶ 21. At the first stage, a circuit court must independently review the defendant's petition within 90 days of its filing and shall dismiss the petition summarily if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the petition is not summarily dismissed as being frivolous or patently without merit, the petition advances to the second stage. *Hodges*, 234 Ill. 2d at 10. At the second stage, counsel may be appointed to an indigent defendant. 725 ILCS 5/122-4 (West 2020); *Hodges*, 234 Ill. 2d at 10. The State must either file a motion to dismiss or file an answer within 30 days of the court's order to docket the petition. 725 ILCS 5/122-5 (West 2020); *Allen*, 2015 IL 113135, ¶ 21. To avoid dismissal, the defendant bears the burden of making a substantial showing of a constitutional violation to warrant a third-stage evidentiary hearing. *People v. English*, 403 Ill. App. 3d 121, 129 (2010). To proceed to a third-stage evidentiary hearing, allegations in the petition must be supported by the record or by its accompanying affidavits. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). If the circuit court determines the

defendant made a substantial showing of a constitutional violation, the petition advances to the third stage. 725 ILCS 5/122-6 (West 2020); *Allen*, 2015 IL 113135, ¶ 22. At a third-stage evidentiary hearing, the circuit court determines the credibility of the witnesses, decides the weight to be given the testimony and evidence, and resolves any evidentiary conflicts. *People v. Domagala*, 2013 IL 113688, ¶ 34.

¶ 46    The Act contemplates that defendants will file a single petition, thus "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2020); see *People v. Daniel*, 379 Ill. App. 3d 748, 749 (2008) (noting that waiver in the context of postconviction petitions is "better referred to as 'forfeiture' "). Accordingly, a defendant must obtain leave of court to file a successive petition. 725 ILCS 5/122-1(f) (West 2020). To obtain leave, a defendant must demonstrate that he had cause for failing to raise a claim in his initial petition and that he was prejudiced by that failure. *Id.* A defendant establishes "cause" by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* In other words, to establish "cause," a defendant must articulate why he could not have discovered and asserted the claim earlier through the exercise of due diligence. *People v. Peacock*, 2022 IL App (1st) 170308-B, ¶ 6. Further, a defendant establishes "prejudice" by demonstrating that "the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*; see *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). If a defendant fails to demonstrate either cause or prejudice, then the trial court must deny him leave to file. *Smith*, 2014 IL 115946, ¶ 37.

¶ 47    The cause-and-prejudice test for successive petitions involves a higher standard than the first-stage "frivolous or patently without merit" standard applied to initial petitions. See *People*

*v. Edwards*, 2012 IL 111711, ¶¶ 25-29. The cause-and-prejudice test is a "preliminary screening," however, and a defendant need only make a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 48    If the court determines that cause and prejudice have been adequately alleged and allows a defendant to file a successive petition, it advances to the three-stage process for evaluating postconviction petitions. *Id.* ¶ 26. At that point, since the successive petition already satisfied a higher standard, the first stage is rendered unnecessary, and the successive petition is docketed for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶¶ 25, 28 (asserting that a circuit court must determine whether a successive petition "should be docketed for second-stage proceedings").

¶ 49                                B. Standard of Review

¶ 50    In the case at bar, the trial court denied defendant's motion for leave to file a second successive petition. We review *de novo* the denial of leave to file a successive postconviction petition. *Bailey*, 2017 IL 121450, ¶ 26. *De novo* means that we perform the same analysis that a trial judge would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. Under *de novo* review, we may affirm on any basis supported by the record. *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38.

¶ 51                                C. Cause

¶ 52    On appeal, defendant argues that he had cause to raise his claim that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. Defendant identifies three circumstances that he asserts are each an independent, objective factor that impeded his ability to raise his ineffective assistance of appellate counsel claim during initial post-conviction proceedings: (1) post-conviction counsel

either refused to adopt, or adopted and then abandoned, the claims in defendant's first *pro se* amended post-conviction petition; (2) the trial court struck and failed to consider defendant's first *pro se* amended petition; and (3) due to a clerical error, defendant's first successive post-conviction petition was not in the record before this court when we affirmed the denial of leave to file the first successive petition in *People v. Menzie*, 2014 IL App (1st) 121817-U, ¶ 79.

¶ 53    Defendant initially argues that he had cause since post-conviction counsel refused to adopt, or adopted and then abandoned, the claims in defendant's first *pro se* amended petition. This petition, however, did not claim that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. Rather, the first *pro se* amended petition claimed that the trial court abused its discretion by denying defendant's mistrial motion. Further, defendant forfeited this claim of trial error by failing to raise it on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22 ("[I]ssues that could have been raised on direct appeal, but were not, are forfeited."). Therefore, since defendant never claimed that his appellate counsel was ineffective for failing to argue that the trial court erred, and since he forfeited the claim that he in fact raised, we need not address defendant's allegation that post-conviction counsel refused to adopt, or adopted and abandoned, defendant's claim. See *id.*

¶ 54    Defendant also argues that he had cause since the trial court struck and failed to consider defendant's first *pro se* amended petition. First, the record indicates that, at the June 15, 2012 hearing, the trial court struck only the third amended petition, not the first amended petition. Moreover, as stated above, the first amended petition did not claim that defendant's appellate counsel was ineffective for failing to argue that the trial court erred by denying the mistrial motion. Even if the first amended petition had raised this ineffective assistance of appellate

counsel claim, refusing to consider this claim would have been proper. That is because defendant was already represented by counsel when he filed his first amended petition, and a defendant is not entitled to hybrid representation; in other words, a defendant may not exercise the rights of self-representation and assistance of counsel at the same time. *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 31. "Once a defendant elects his right to counsel, the roles of attorney and client are defined, and defense counsel is responsible for strategic matters and has control over the day-to-day conduct of the defense." *Id.* A *pro se* filing should not be considered when a defendant submits it after obtaining counsel. *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 18. Thus, even if defendant had raised an ineffective assistance of appellate counsel claim in his first amended petition, refusing to consider this claim would have been proper. See *id.*; *Stevenson*, 2011 IL App (1st) 093413, ¶ 31. Further, for the foregoing reasons, we find inapposite the cases that defendant cites for his argument that the trial court erred by failing to resolve his claim. See *People v. Britt-El*, 206 Ill. 2d 331, 338 (2002); *People v. Free*, 122 Ill. 2d 367, 376 (1988).

¶ 55    Defendant lastly argues that due to a clerical error, defendant's first successive post-conviction petition was not in the record before this court when we affirmed the denial of leave to file the first successive petition in *People v. Menzie*, 2014 IL App (1st) 121817-U, ¶ 79. As to defendant's first successive petition, this court found that "no such petition was included in the record on appeal." *Id.* ¶ 40. Defendant's first successive petition was included in the record in the instant appeal. This petition, however, did not claim that appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. Rather, defendant's first successive petition claimed that the trial court erred when it denied defendant's mistrial motion. As stated above, defendant forfeited this claim when defendant failed to raise it on direct appeal. See *English*, 2013 IL 112890, ¶ 22. Moreover,

defendant fails to point to any evidence in the instant record that his first successive petition was omitted from the prior record due to a clerical error. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). In any event, this court found that defendant forfeited review of the denial of his motion for leave to file his first successive petition since he failed to raise any arguments supporting his appeal. *People v. Menzie*, 2014 IL App (1st) 121817-U, ¶ 44 (citing *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29). Thus, even if a copy of defendant's first successive petition had been in the record before this court in *People v. Menzie*, 2014 IL App (1st) 121817-U, this court still would have found that defendant forfeited review of the denial of leave to file his first successive petition. See *id.*

¶ 56    For the foregoing reasons, we find that defendant has failed to articulate why he could not have discovered and asserted earlier his claim that his appellate counsel was ineffective for failing to raise on direct appeal that the trial court erred when it denied defendant's mistrial motion. See *Peacock*, 2022 IL App (1st) 170308-B, ¶ 6. Defendant has failed to make a *prima facie* showing of cause. See 725 ILCS 5/122-1(f) (West 2020); *Bailey*, 2017 IL 121450, ¶ 24. Further, since we have found that defendant has failed to establish cause, we need not consider whether defendant has established prejudice. See *Smith*, 2014 IL 115946, ¶ 37. We therefore find that the trial court did not err when it found that defendant failed to satisfy the cause-and-prejudice test and denied defendant leave to file a second successive petition. Moreover, since defendant has failed to satisfy the cause-and-prejudice test, we need not address his argument that the trial court erred when it found that *res judicata* barred defendant's claims in his second successive post-conviction petition. See *Jackson*, 2021 IL App (1st) 190263, ¶ 38 ("[A] reviewing panel *** may affirm on any basis found in the record.").

¶ 57                                CONCLUSION

¶ 58     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 59     Affirmed.